United States Court of Appeals,

Eleventh Circuit.

Nos. 96-2290, 96-2321.

GJR INVESTMENTS, INC., Plaintiff-Appellee,

v.

COUNTY OF ESCAMBIA, FLORIDA, a political subdivision of the State of Florida, Lisa Minshew, Defendants,

W.A. Lee, a.k.a Buck Lee, Wiley C. Page, Bennie Kenney, Defendants-Appellants.

GJR Investments, Inc. Plaintiff-Appellee,

v.

County of Escambia, Florida, a political subdivision of the State of Florida Defendant,

Lisa Minshew, Defendant-Appellant,

W.A. Lee, a.k.a. Buck Lee, Wiley C. Page, Bennie Kenney, Defendants.

Jan. 5, 1998.

Appeals from the United States District Court for the Northern District of Florida. (Nos. 95-30380/LAC, 95-30380-CIV-LAC), Lacey A. Collier, Judge.

Before HATCHETT, Chief Judge, and TJOFLAT and COX, Circuit Judges.

COX, Circuit Judge:

This case concerns a highly politicized dispute over plaintiff-appellee GJR Investments, Inc.'s desire to construct an RV campground on its property on Perdido Key in Escambia County, Florida. Escambia County eventually granted GJR a permit to build the campground, although GJR had to submit four separate applications, and filed two state court lawsuits in the process. GJR then sued the county and several county officials and employees under 42 U.S.C. § 1983 for damages caused by the delay in approving the permit, alleging that the county and the named defendants had

violated GJR's constitutional rights by delaying the permit approval process.

GJR contends that the individual defendants-appellants[1] intentionally threw up procedural roadblocks during the permit approval process in an attempt to delay or deter its construction of an RV park on Perdido Key. GJR argues that these actions violated its rights both to due process and to equal protection under the Fourteenth Amendment, and further that the delay in effect accomplished a taking of its property without just compensation for purposes of the Fifth Amendment.[2] In the district court the defendants moved to dismiss GJR's claims under Fed.R.Civ.P. 12(b)(6) on the ground of qualified immunity. The court denied the motions, and defendants appealed. For the reasons stated below, we reverse the district court's ruling.

## I. ALLEGATIONS OF THE COMPLAINT

A complete copy of the complaint is made an appendix to this opinion. Accepting all allegations in the complaint as true, and construing facts in a light most favorable to the plaintiff, *see Harper v. Thomas,* 988 F.2d 101, 103 (11th Cir.1993), we summarize the allegations as follows.

Appellee GJR Investments, Inc. is a Texas corporation that is the "beneficial owner,"[3] (R.1-1 at 3), of certain real property on Perdido Key in Escambia County, Florida. The property is located in an area designated by Escambia County Ordinance Code (the "Code") 89-6 as a commercial "C-1"

---

[1]Although Escambia County is also a defendant to the suit, it is not a party to this appeal. We will refer to the four individual defendants-appellants (Minshew, Lee, Page and Kenney) collectively as "defendants" for purposes of this opinion, naming Escambia County separately when necessary.

[2]While GJR makes these constitutional arguments in its brief, this appeal comes to us in the context of a motion to dismiss. Therefore, the proper inquiry, *see* Part V.B.2., *infra,* is whether GJR sufficiently alleged a constitutional violation in its *complaint.*

[3]This is the term that GJR uses in its complaint to describe its interest in the property at issue. However, the complaint fails to explain further the nature of this "beneficial" ownership, stating only that Perdido Beach Limited, a Louisiana limited partnership, and Yenavlum, Inc., a Texas corporation, "[hold] legal title to the Property as [GJR's] agents and nominees." (R.1-1 at 4.)

zoning district. GJR sought to develop the property as an RV campground despite strident opposition from the residents of Perdido Key.

In October 1992 GJR filed its first application to develop the property as a campground. On the advice of the staff of the Escambia County Department of Growth Management Services that the proposed campground was not a "permitted use" in a C-1 district, GJR applied to develop the property as a special exception and planned use development ("PUD"). GJR withdrew its application in December of 1992, upon further advice from the Growth Management Services staff that the application still did not comply with the Code.

In May 1993 GJR submitted a second application, this time to develop the campground as an amusement/recreational facility and a PUD. The Escambia County Zoning Board of Adjustment denied this application, and GJR appealed to the Escambia County Board of County Commissioners, which affirmed the decision. GJR subsequently appealed the county commissioners' decision to the Florida state courts.

While its appeal was pending, GJR filed a third application, this time for permission to develop the campground as a permitted use under the Code. This application also was denied. Subsequently, GJR filed a suit for declaratory judgment, asking the Florida courts to declare that development of the property as a campground is a permitted use under the Code. In March 1994, the parties settled the dispute regarding the permit: The county agreed to approve a fourth application from GJR to develop the property as a campground as a permitted use, and in return GJR dismissed both of its pending state lawsuits.

In its complaint, GJR calls attention to various actions on the part of the individual defendants that GJR alleges violated its constitutional rights:

A. BENNIE KENNEY

Kenney is an assistant to W.A. "Buck" Lee, an Escambia County Commissioner. Kenney is a resident of Perdido Key who opposed the construction of the campground and was involved in a citizens' group that organized to oppose the project. GJR alleges that at defendant Wiley C. Page's invitation, Kenney attended a Growth Management Services staff meeting pertaining to GJR's second application, even though attendance at such a meeting does not fall within Kenney's job responsibilities and she had never previously been invited to attend one.

GJR also alleges that before the appeal of its second application to the Board of County Commissioners, Kenney asked Lee to order a U.S. Department of Agriculture soil analysis of GJR's property at the behest of another Perdido Key resident who opposed the project. The resident had attempted to obtain such an analysis on his own, but was informed that only the landowner or a county commissioner could request one. GJR claims that Kenney asked Lee to order such an analysis at the request of the resident.

B. W.A. "BUCK" LEE

Defendant Lee is an Escambia County Commissioner. Lee neither represented nor resided on Perdido Key, but he spoke out against the project at the Zoning Board hearing on GJR's second application despite the fact that as a county commissioner he would hear any appeal of the Zoning Board's decision. Lee also ordered a Department of Agriculture soil analysis of GJR's property, the results of which he then distributed to his fellow commissioners. GJR also alleges that Lee distributed numerous letters from Perdido Key residents opposed to the project to his fellow county commissioners, and only recused himself from the appeal proceeding at GJR's objection.

C. WILEY C. PAGE

Page is the director and supervisor of the Escambia County Department of Growth Management Services ("GMS"). GJR alleges that before the submission of its first application for

development Page directed the GMS staff to misrepresent the development requirements for a C-1 district and to inform GJR that it could develop a campground on the property only as a special exception and PUD, not as a permitted use. GJR also alleges that in response to the significant public outcry against the project, Page directed the GMS staff to review GJR's first application more strictly than other development applications filed in Escambia County.

Regarding the second application, GJR alleges that Page expressly invited Kenney to attend the GMS staff meeting, knowing that she opposed the project and that attendance at such a meeting did not fall within her responsibilities as Lee's assistant. Following the meeting, Page informed GJR that even though the GMS staff recommended approval of the second petition, he would recommend that the Zoning Board deny the application. He further informed GJR that in order to obtain a permit, it would have to appear before the Zoning Board in person to plead its case and persuade the Board to award the permit. GJR claims that Page inappropriately presented county commissioners with additional letters from Perdido Key residents opposed to the project as part of the record on appeal and invited BCC members to contact him for further information regarding residents' remarks about the project. Finally, GJR asserts that Page "administratively "rejected' " its third application out of hand. (R.1-1 at 16.)

D. LISA MINSHEW

Minshew is an attorney retained by Escambia County for land use matters. GJR alleges that Minshew initially advised the GMS staff to reject GJR's application, stating that GJR was an "out-of-state developer" and noting the Perdido Key residents' considerable hostility to the project. GJR contends that Minshew gave the GMS staff erroneous and misleading instructions regarding the prerequisites for approval of GJR's petition. Further, GJR avers, it was "standard procedure" to submit incomplete permit applications to the Zoning Board for approval, but Minshew advised the

GMS staff not to do so with GJR's incomplete permit application.

GJR also asserts misconduct on Minshew's part at the Zoning Board hearing, alleging that Minshew coerced a GMS staff member into making false statements to the Board regarding the applicable criteria for approval of the project. In addition, GJR contends that after the formal presentation and comment period, Minshew engaged in an *ex parte* communication with Zoning Board members which prompted them to "summarily reject" the second application. Finally, GJR alleges that Minshew attempted to introduce erroneous and misleading material into the official record at the BCC appeal and knowingly misstated the applicable law to the commissioners.

## II. PROCEDURAL HISTORY

Following the approval of its fourth application, GJR filed this suit against Escambia County, Minshew, Lee, Page, and Kenney. GJR's "First Cause of Action" alleges that the defendants individually violated GJR's constitutional rights, asserting claims under 42 U.S.C. § 1983. Its "Second Cause of Action" contends that the defendants conspired to violate the same rights and also seeks relief under § 1983.[4] The "Third Cause of Action" alleges that Escambia County took GJR's property without just compensation in violation of the Fifth and Fourteenth Amendments. GJR claims as damages unnecessary fees, taxes and insurance premiums, lost profits, and increased costs resulting from the delay it incurred in getting its permit application approved.

All defendants moved to dismiss, claiming, *inter alia,* qualified immunity from GJR's suit. The district court turned to *Restigouche, Inc. v. Town of Jupiter,* 59 F.3d 1208 (11th Cir.1995), which enumerates four possible types of constitutional challenges applicable to a zoning decision: "(1) just compensation takings, (2) due process takings, (3) substantive due process, ... and (4) equal

---

[4]It is black-letter law that § 1983 is not itself a source of substantive rights. *See, e.g., Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994).

protection." *Id.* at 1211 n. 1 (citing *Eide v. Sarasota County,* 908 F.2d 716, 720 (11th Cir.1990)).

The court concluded that allegations supporting any one of these four claims would defeat a motion to dismiss under 12(b)(6). The district court divined an equal protection claim from two allegations buried in the middle of GJR's exhaustive and rambling recitation of the events: an allegation that GJR's development applications had been subjected to stricter analysis *vis-à-vis* other unspecified development applications filed in Escambia County, and an allegation that GJR had been required to present its application to the Zoning Board directly, unlike other developers in Escambia County. Based on these allegations, the district court held that it could not conclude as a matter of law that defendants' actions did not violate GJR's equal protection rights, and denied defendants' 12(b)(6) motions.[5]

The district court reviewed the defendants' qualified immunity arguments with respect to the equal protection claim it found in its 12(b)(6) analysis. It concluded that GJR had alleged a violation of a clearly established constitutional "right to be treated equally in its application for a development permit," (R.2-83 at 10), finding authority for the existence of such a right in *Eide v. Sarasota County,* 908 F.2d 716 (11th Cir.1990). However, the district court stated that it could not determine whether a genuine issue of fact existed as to whether GJR's rights in this respect had been violated.[6]

---

[5]This ruling seems based on the idea that a party who cannot successfully assert qualified immunity as to one of several claims in a complaint is foreclosed from asserting qualified immunity to *any* of the claims. This notion is erroneous, as we discuss in Part V.B.3., *infra.*

[6]It is unclear why the district court made any determination with respect to issues of material fact. The defendants moved to dismiss GJR's complaint under Fed R. Civ. P. 12(b)(6), not for summary judgment under Rule 56. Thus, the appropriate inquiry was whether GJR's complaint sufficiently stated a claim, not whether material issues of fact existed. *See, e.g., Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). While Rule 12 provides that a 12(b)(6) motion to dismiss shall be treated as a Rule 56 summary judgment motion if a movant presents matters outside the pleading to the court, it does not appear that the defendants presented such material in their motions to dismiss, and the district court's order does not indicate that it in fact utilized this provision of Rule 12 in ruling on the motions.

It therefore denied the defendants' motions to dismiss and permitted discovery with respect to the qualified immunity question. Page subsequently moved for reconsideration or clarification of the district court's order with respect to other claims in the complaint, specifically substantive due process. On reconsideration, the court dismissed GJR's substantive due process claim with prejudice. Kenney, Lee, Minshew, and Page appeal from the district court's order denying their motions to dismiss with respect to the equal protection claim.

### III. ISSUE ON APPEAL

The issue we address on appeal is whether the district court erred in dismissing defendants' motions to dismiss on the ground of qualified immunity, based on its determination that GJR's complaint alleged a violation of a clearly established equal protection "right to be treated equally in its application for a development permit." (R.2-83 at 10.)

### IV. CONTENTIONS OF THE PARTIES

Primarily, the defendants contend that the district court erred in holding that GJR's complaint alleged an equal protection violation. The court analyzed GJR's claims under a "rational basis" standard applicable to facial challenges to legislation, but the defendants argue that GJR's complaint at most makes out an "as applied" challenge. They contend that the court instead should have determined whether the complaint sufficiently alleged the discriminatory application of a facially neutral law, *see E & T Realty v. Strickland,* 830 F.2d 1107 (11th Cir.1987), and that GJR's complaint fails so to allege. Only Minshew addresses GJR's Fifth Amendment takings claim, arguing that it fails in two respects: (1) GJR failed to exhaust its available state court remedies, and (2) the denial of the development permit did not constitute a taking, as it did not deprive GJR of all viable economic use of the Perdido Key property.

Finally, the defendants contend that the failure of GJR's substantive claims dooms its § 1983

conspiracy claim, as a plaintiff may only maintain a § 1983 conspiracy action if it first demonstrates an underlying constitutional violation. In the alternative, defendants argue that the allegations supporting the existence of a conspiracy are conclusory at best, and the district court should have dismissed the conspiracy claim on this basis regardless of its determination of the merits of the substantive claims.

GJR agrees that any equal protection claim in its complaint should be analyzed as an "as applied" challenge, but contends that its pleading sufficiently makes out such a claim. GJR argues that its complaint alleges that it is situated similarly to all other owners of C-1 zoned property who have applied for a permit to develop their land for a permitted use. In addition, it contends that the complaint "adequately identified [GJR] as part of a group against which [the defendants] purposefully discriminated—nonresidents of Florida." Appellee's Brief at 28. As to the Fifth Amendment takings claim, GJR asserts that this claim is only against the county, and not any of the individual defendants. The county is not a party to this appeal, thus, GJR argues, any resolution of the merits of the just compensation claim is improper at this stage of the litigation. Finally, GJR argues that the district court did not err in refusing to dismiss the conspiracy claim, as the complaint sufficiently alleged both substantive constitutional violations and a conspiracy among the defendants.

## V. DISCUSSION

### A. JURISDICTION

Before turning to the merits of this appeal, we briefly address the issue of this court's jurisdiction over this interlocutory appeal. We earlier requested the parties to brief the jurisdictional question; after receiving the parties' responses, we ruled that the issue would be carried with the case. Upon further consideration we find that this court has jurisdiction over the appeal.

While it is true that the district court could not determine whether a genuine issue of material fact existed with respect to whether defendants' conduct violated clearly established law,[7] that conclusion alone does not preclude interlocutory appellate review of the denial of a motion to dismiss on qualified immunity grounds. The Supreme Court clarified this issue in *Behrens v. Pelletier,* 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (limiting *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)), rejecting the contention that the existence of material issues of fact in itself bars interlocutory review of accompanying issues of law. *See id.* at ----, 116 S.Ct. at 842. We reiterated this point in *Cottrell v. Caldwell,* 85 F.3d 1480 (11th Cir.1996), stating, "[A]s clarified by *Behrens, Johnson* [*v. Jones* ] does not affect our interlocutory jurisdiction in qualified immunity cases where the denial is based even in part on a disputed issue of law." *Id.* at 1485.

In addition to finding that issues of material fact existed, the district court found that GJR's complaint alleged the violation of a clearly established "right to be treated equally in its application for a development permit." (R.2-83 at 10.) This is an issue of law disputed by the parties on appeal, and we therefore have jurisdiction to review the district court's ruling on this issue under *Behrens* and *Cottrell. Cf. Bennett v. Parker,* 898 F.2d 1530, 1532 (11th Cir.1990) (petitioner failed as a matter of law to sufficiently allege a constitutional violation, therefore existence of disputed issues of material fact does not affect interlocutory jurisdiction). However, our appellate jurisdiction in matters such as this extends only to the legal issues surrounding the district court's denial of defendants' motions to dismiss, *i.e.,* issues concerning whether GJR's complaint sufficiently alleged the violation of a clearly established right. *See Marx v. Gumbinner,* 855 F.2d 783, 791 n. 15, 792 n. 16 (11th Cir.1988).

---

[7]Again, we are unsure why the district court made this determination. *See supra* note 6.

B. QUALIFIED IMMUNITY

## 1. *Background Law*

Defendants argue that they are entitled to qualified immunity from GJR's claims. The defense of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation. The defense embodies an "objective reasonableness" standard, giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them. Qualified immunity thus represents the rule, rather than the exception: "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994).

Under the qualified immunity doctrine, government officials performing discretionary functions[8] are immune not just from liability, but from *suit,* unless the conduct which is the basis for suit violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For a right to be "clearly established," previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

---

[8]The parties do not dispute that the defendants were acting within their discretionary authority at all relevant times.

At this stage in the proceedings, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined. *See Wooten v. Campbell,* 49 F.3d 696, 699 (11th Cir.), *reh'g denied,* 58 F.3d 642 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 379, 133 L.Ed.2d 302 (1995). The Supreme Court has held that a "necessary concomitant" to the question of whether a plaintiff has alleged a violation of a clearly established federal right is "the determination of whether the plaintiff has asserted a violation of a constitutional right *at all.*" *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (emphasis added). If a plaintiff has not sufficiently alleged a violation of *any* constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a "clearly established" right.

The determination of whether a complaint sufficiently states a claim is a matter of law that we review *de novo. See Harper v. Thomas,* 988 F.2d 101, 103 (11th Cir.1993). In so doing, we use the same standard as the district court, accepting all allegations as true and construing facts in a light most favorable to the plaintiff. *See, e.g., Stephens v. Department of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir.1990). However, while Fed.R.Civ.P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim. *See Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992) (citing *Arnold v. Bd. of Educ.,* 880 F.2d 305, 309 (11th Cir.1989)). Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violate a clearly established right. Accordingly, when reviewing a district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement. *See*

*id.*

## 2. *GJR's Equal Protection Claim*

We conclude that GJR's complaint fails to pass the first part of the qualified immunity inquiry. It simply fails to state an equal protection claim, even without the additional hurdle of the heightened pleading standard. The words "equal protection" do not appear *anywhere* in the complaint.[9] GJR's claims for relief under § 1983 do not allege unequal treatment or discriminatory motive on the part of the defendants. Even when viewed in the light most favorable to GJR, the most the complaint alleges is that GJR had to jump through a few more procedural hoops than unspecified other permit applicants before it eventually received its permit. As we conclude that the complaint fails to allege that GJR's equal protection rights were violated at all, we need not focus on the conduct of the individual defendants.[10]

All of the parties contend, and we agree, that the complaint challenges Escambia County's zoning regulations not on their face, but as applied to GJR. Therefore, the district court's use of the "rational basis" standard was improper; it should have determined whether GJR sufficiently alleged (1) that it was treated differently from similarly situated persons, and (2) that the defendants unequally applied the Escambia County zoning laws for the purpose of discriminating against GJR. *See, e.g., Snowden v. Hughes,* 321 U.S. 1, 6, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); *Strickland v. Alderman,* 74 F.3d 260, 264 & n. 4 (11th Cir.1996).

---

[9]In *Eide v. Sarasota County,* 908 F.2d 716 (11th Cir.1990), the case upon which the district court relied to find the existence of a clearly established right to be treated equally in the application for a zoning permit, we noted that the absence of the words "taking" and "eminent domain" from a plaintiff's complaint and pre-trial stipulation foreclosed the possibility that the plaintiff had made out a due process takings claim. *See id.* at 723.

[10]As an additional matter, the holding in this case obviates the need to reach the question of whether our decision in *Eide v. Sarasota County,* 908 F.2d 716 (11th Cir.1990), clearly established a Fourteenth Amendment right to be treated equally in the application for a permit.

GJR's complaint fails on both counts. With regard to the "similarly situated" prong, the complaint does not present a single instance in which a similarly situated developer was granted a permit; it merely alleges that nameless, faceless "other" permit applicants were given better treatment. Bare allegations that "other" applicants, even "all other" applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these "other" applicants were situated similarly to the plaintiff. In its brief GJR attempts to cure the defects in its complaint by arguing that the complaint can be read to state that GJR was treated differently from *all other* owners of C-1 property. We decline to accept such a tortured reading of the complaint. GJR's argument is neither persuasive nor timely; a motion to dismiss attacks a complaint on its face, and on the plain face of GJR's complaint we find no such allegations of dissimilar treatment.

GJR's allegations of discriminatory intent are deficient in much the same way, using many broad pejorative words to describe the defendants' intentions without giving any specifics. In its brief GJR cites *Snowden v. Hughes* for the proposition that a practice need not be systematic or long-continued to constitute discrimination. While this is true, immediately following the passage cited in GJR's brief the *Snowden* Court also noted:

> The lack of any allegations in the complaint ... tending to show a purposeful discrimination ... is not supplied by the opprobrious epithets "willful" and "malicious" ..., or by characterizing [the defendant's actions] as an unequal, unjust, and oppressive administration of the laws.... These epithets disclose nothing as to the purpose or consequence of [the defendant's actions].... Such allegations are insufficient under our decisions to raise any issue of equal protection of the laws....

*Snowden,* 321 U.S. at 10, 64 S.Ct. at 402. GJR's allegations that the defendants' actions were "arbitrary and capricious in that [they] acted with an improper motive, without reason, or upon a reason that was merely pretextual," (R.1-1 at 18), are uncannily similar to those the Supreme Court rejected in *Snowden,* and are insufficient for much the same reason.

The district court's error in finding an equal protection claim probably stemmed at least in part from the difficulty in deciphering GJR's complaint, which unfortunately is a classic example of what is referred to in this circuit as a "shotgun pleading." *See, e.g., Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1483-84 (11th Cir.1992); *Pelletier v. Zweifel,* 921 F.2d 1465, 1518 (11th Cir.1991). The complaint presents scores of allegations regardless of their relevance and incorporates them in their entirety into several counts asserting discrete claims for relief, each of which contains several references to haphazardly described constitutional "rights." For example, the "First Cause of Action" of the complaint refers to GJR's "general right to be free from abuses of governmental power worthy of constitutional protection," (R.1-1 at 18), but fails to identify where in the Constitution this particular right may be found. In another instance, GJR accuses the defendants of "conspir[ing] to use *unlawfully legal processes* to prevent Plaintiff's development of its Property." (R.1-1 at 19; emphasis added.) In analyzing the complaint, we are confronted as the district court was with the difficulty of ascertaining the outlines of GJR's claims; it is unclear from the complaint exactly which of GJR's constitutional rights it feels the defendants have violated. Determining which factual allegations are relevant to which claim is practically impossible, as is matching specific acts of the defendants to violations of GJR's rights.

We stress at this point, as we did in *Oladeinde, see* 963 F.2d at 1485, that the heightened pleading requirement is the law of this circuit. The district court was far too lenient with GJR's shotgun complaint; application of the heightened pleading standard is one way to deal summarily with pleadings of this kind. Although the Supreme Court has held that courts may not impose a heightened pleading requirement in § 1983 cases involving municipalities, *see Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit,* 507 U.S. 163, 167-68, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993), the Court specifically declined to extend its holding to cases

involving individual government officials, *see id* at 167, 113 S.Ct. at 1162, and we likewise decline to do so here.

Having given up, it seems, on determining which claims GJR actually raised in its complaint, the district court turned to *Restigouche* which lists four possible constitutional challenges to a zoning: "(1) just compensation takings, (2) due process takings, (3) substantive due process, ... and (4) equal protection." *Restigouche, Inc. v. Town of Jupiter,* 59 F.3d 1208, 1211 (11th Cir.1995). The court stated that "[a]llegations showing that any one of the four grounds may have been violated will defeat a motion to dismiss," (R.2-83 at 7-8), and found that GJR's complaint successfully alleged an equal protection claim. In doing so, the district court went beyond the permissible boundaries of Fed.R.Civ.P. 8, in effect supplying GJR with an equal protection claim when none was evident on the face of the complaint.

Rule 8 requires that federal courts give pleadings a liberal reading in the face of a 12(b)(6) motion to dismiss. This admonition is particularly true when the parties are proceeding *pro se.* Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education. *See, e.g., Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, *see Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991), or to rewrite an otherwise deficient pleading in order to sustain an action, *see Pontier v. City of Clearwater,* 881 F.Supp. 1565, 1568 (M.D.Fla.1995). GJR was represented by counsel; it was not necessary for the court to read GJR's complaint with such indulgence.

Reading complaints with this level of indulgence is particularly troublesome when defendants raise the issue of qualified immunity. As we mentioned earlier, qualified immunity protects officials not just from liability, but from suit and its attendant burdens, allowing them to

perform their official functions without the threat of retaliatory nuisance suits. Every successive stage to which a suit progresses reduces the effectiveness of the defense, requiring officials to spend time at the courthouse rather than the statehouse. The defense becomes useless if an official's motion to dismiss covers all of the claims reasonably apparent from a plaintiff's complaint, but the district court divines another claim by which the plaintiff may defeat qualified immunity. The Supreme Court noted the hazards of this approach:

> Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. [*Harlow v. Fitzgerald* 's rule] would be transformed from a guarantee of immunity into a rule of pleading.

*Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). We also have recognized this danger, noting that "a plaintiff must not be permitted, through the use of the kind of "shotgun' pleading tactic evident here, to strip government officials of the protection provided by the official immunity doctrine." *Marx v. Gumbinner,* 855 F.2d 783, 792 (11th Cir.1988).

"Among the cardinal principles of our Anglo-American system of justice is the notion that the legal parameters of a given dispute are framed by the positions advanced by the adversaries, and may not be expanded *sua sponte* by the trial judge." *Doubleday & Co. v. Curtis,* 763 F.2d 495, 502 (2d Cir.1985). A district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity. To do so is to ignore both the heightened pleading standard for § 1983 claims that is the law of this circuit and the Supreme Court's call for a "firm application of the Federal Rules of Civil Procedure" in cases where qualified immunity is asserted. *Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). The district court transgressed both of these principles in divining an equal protection claim from GJR's complaint.

### 3. *GJR's Other Claims*

The district court also erred in declining to determine whether the defendants had immunity from all of GJR's claims against them. In analyzing GJR's complaint, the district court stated that "[a]llegations showing that any one of the four grounds [identified in *Restigouche* for challenging a zoning decision] may have been violated will defeat a motion to dismiss." (R.2-83 at 7-8.) While it is true that allegations sufficient to overcome a qualified immunity defense will keep a case in court, this did not entitle the district court to limit its analysis to an equal protection claim. The court should have proceeded to determine whether the individual defendants had qualified immunity with respect to GJR's remaining claims. As we previously stated, qualified immunity is a defense not only from liability, but from suit, which makes it important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible. *See Hill v. Dekalb Reg'l Youth Detention Ctr.,* 40 F.3d 1176, 1184 (11th Cir.1994). A district court's refusal to address claims possibly barred by qualified immunity effectively denies defendants immunity from suit on those claims. *Cf. Collins v. School Bd.,* 981 F.2d 1203, 1205 (11th Cir.1993) (defendants entitled to immediate appeal from denial of summary judgment based on qualified immunity, even if plaintiff has other claims pending).

Thus, we now address the remainder of GJR's complaint. Upon further examination, the only claims against the defendants that even come close to being sufficient are: (1) a substantive due process claim and (2) a Fifth Amendment just compensation claim. The district court dismissed the substantive due process claim with prejudice upon reconsideration, and GJR does not challenge this ruling on appeal. As for the just compensation claim, in its "First Cause of Action" GJR alleges that it has a "right not to have its property taken without payment of just compensation," (R.1-1 at 18), after which it claims that the actions of all defendants deprived it of "rights, privileges or immunities

secured to [it] by the U.S. Constitution." (R.1-1 at 18.) This would seem to intimate a just compensation claim against the defendants; Minshew, in fact, attempted to answer such a claim in her brief. However, in its brief GJR asserts that the complaint does not assert a just compensation claim against the individual defendants. *See* Appellee's Brief at 45. We will not discern a claim that the plaintiff itself claims does not exist in its complaint.

GJR's "Second Cause of Action," also a § 1983 claim, alleges a conspiracy among the defendants to violate GJR's constitutional rights. *See generally Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988) (stating theoretical basis of and requirements for stating a claim under § 1983 of conspiracy to violate constitutional rights). However, to sustain a conspiracy action under § 1983 (as distinguished from § 1985[11]) a plaintiff must show an underlying actual denial of its constitutional rights. *See Slavin v. Curry,* 574 F.2d 1256, 1262 (5th Cir.), *modified on denial of r'hrg,* 583 F.2d 779 (5th Cir.1978). As we have stated, GJR's complaint does not sufficiently allege that *any* of its constitutional rights have been violated. Moreover, the complaint fails to make any particularized allegation that a conspiracy existed, another prerequisite of a § 1983 conspiracy claim. *See Phillips v. Mashburn,* 746 F.2d 782, 784 (11th Cir.1984). As we can find no sufficiently pled federal claims in the complaint that could serve to abrogate defendants' qualified immunity, it follows that the district court erred in denying defendants' motions to dismiss on those grounds.

CONCLUSION

At oral argument, counsel for GJR stated that the events surrounding GJR's attempt to build an RV park on Perdido Key represented the most egregious abuse of zoning law he had seen in his 30-year career. Whether or not that is so, the allegations of this complaint entitle GJR to no relief

---

[11]As GJR does not allege that the defendants' actions stemmed from racial or class-based animus, it can not satisfy the essential elements of a § 1985 conspiracy action. *See Lucero v. Operation Rescue,* 954 F.2d 624, 628 (11th Cir.1992).

against these individual defendants. For the reasons stated in this opinion, we conclude that the district court erred in finding that GJR's complaint sufficiently alleged a violation of its constitutional rights. Accordingly, we reverse the district court's denial of the individual defendants' motions to dismiss on qualified immunity grounds and remand to the district court with instructions to enter judgment dismissing with prejudice the damage claims against the individual defendants.

REVERSED AND REMANDED.

APPENDIX

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA

PENSACOLA DIVISION

GJR Investments, Inc., Plaintiff,

vs.

Escambia County, A Political Subdivision of the State of Florida, Lisa Minshew, W.A. "Buck" Lee, Wiley C. Page, and Bennie Kenney, Defendants.

Civil Action No. 95-30380/LAC.

*PLAINTIFF'S ORIGINAL COMPLAINT*

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff GJR Investments, Inc. ("Plaintiff") in the above-entitled and numbered cause complaining of Defendants Escambia County, A Political Subdivision of the State of Florida ("Escambia County"), Lisa Minshew ("Minshew"), W.A. "Buck" Lee ("Lee"), Wiley C. Page ("Page"), and Bennie Kenney ("Kenney"), and for causes of action would respectfully show unto this Honorable Court as follows:

I. *Preliminary Statement and Jurisdiction*

1. Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Defendants deprived Plaintiff

of its right under the Fourteenth Amendment to the United States Constitution to substantive due process and its right under the Fifth Amendment to the United States Constitution not to have its property taken without just compensation. In the alternative, and without waiver of the foregoing, Defendant Escambia County violated Plaintiff's rights under the Fifth Amendment to the United States Constitution by denying and delaying Plaintiff's application for a permit to develop Plaintiff's property resulting in an impermissible taking of Plaintiff's property without just compensation.

2. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1343.

## II. *Party Plaintiff*

3. Plaintiff GJR Investments, Inc. is a Texas corporation having its principal place of business at 1240 Blalock, Houston, Texas 77055.

## III. *Parties Defendant*

4. Defendant Escambia County is a political subdivision of the State of Florida and may be served with process by serving Barry R. Evans, the County Administrator, and David Tucker, the County Attorney, at 232 Palafox Place, Pensacola, Florida 32597-1591.

5. Defendant Lisa Minshew is an individual residing in Escambia County, Florida, and may be served with process at her place of employment 600 Barracks Street, Suite 201, Pensacola, Florida 32501.

6. Defendant W.A. "Buck" Lee is an individual residing in Escambia County, Florida, and may be served with process at his place of residence 1540 Bayshore Lane, Pensacola, Florida 32507.

7. Defendant Wiley C. Page is an individual residing in Escambia County, Florida, and may be served with process at his place of residence 8050 North 9th Avenue, Apt. 144, Pensacola, Florida 32514.

8. Defendant Bennie Kenney is an individual residing in Escambia County, Florida, and may be served with process at her place of residence 16501 Perdido Key Drive, Pensacola, Florida 32507.

IV. *Statement of Facts*

A. Background Facts

9. Plaintiff is a Texas corporation. Its principal offices are in Houston, Texas. Plaintiff acquires, owns, develops and operates real property.

10. Perdido Beach Limited, a Louisiana limited partnership, and Yenavlum, Inc., a Texas corporation, are the holders of legal title of certain real property ("Property") located on Perdido Key, in Escambia County, Florida, which is more particularly described in Exhibit "A" attached hereto and incorporated herein for all purposes as if fully set out verbatim. Plaintiff is the beneficial owner of the Property. At all times relevant hereto, Perdido Beach Limited, a Louisiana limited partnership, and Yenavum, Inc., a Texas corporation, have held legal title to the Property as agents and nominees of Plaintiff.

11. The Property is located in a commercial zoning district ("C-1 District") under the applicable zoning regulation, Escambia County Ordinance Code 89-6, as amended (the "Code"). Plaintiff sought to develop and operate the Property to provide rental sites or pads as temporary living quarters for recreational vehicles (a "Campground") which under the Code is a permitted use in a C-1 District.

12. In February, 1992, Plaintiff met with employees of the Escambia County Department of Growth Management Services (the "Staff") concerning Plaintiff's development plan for the Property. At such meeting and at all times relevant hereto, Defendant Page was the director and supervisor of the Escambia County Department of Growth Management Services. During such meeting, the

Staff, at the direction and control of Defendant Page, knowingly and intentionally misrepresented to Plaintiff the development requirements of Escambia County under the Code for land located in a C-1 District. Plaintiff was informed by the Staff that in order to develop and operate a Campground on the Property, Plaintiff could do so only as a special exception ("Exception") and planned unit development ("PUD") but could not do so as a permitted use.

B. Plaintiff's First Application

13. Plaintiff, in reliance on Staff's information and requirements, filed in October, 1992, its initial application to develop the Property as an Exception and PUD under the Code. Immediately after filing such application, substantial public opposition arose to Plaintiff's development of the Property as a Campground. The Staff, at the direction and control of Defendant Page, processed, reviewed and analyzed Plaintiff's application in a discriminatory manner and more strictly than other development applications filed in Escambia County.

14. In December, 1992, Plaintiff withdrew its initial application for development of the Property since the Staff continued to advise Plaintiff that its development did not comply with Escambia County's purported Exception and PUD requirements. At the time Plaintiff's initial development application was withdrawn, the Staff, under the direction and control of Defendant Page, prepared a Special Exceptions Criteria Worksheet and recommended denial of Plaintiff's initial development application. To determine what additional information, if any, was required to satisfy the purported Exception and PUD requirements, Plaintiff requested a copy of the review from Defendant Page on at least four occasions between December, 1992, and February, 1993. Despite the fact that Plaintiff previously paid the requisite fee to obtain such a review, Defendant Page and the Staff refused to provide such review to Plaintiff.

C. Plaintiff's Second Application

15. On May 7, 1993, Plaintiff submitted its second application for development of the Property to the Escambia County Department of Growth Management Services. Staff, under the direction and control of Defendant Page, caused Plaintiff to submit its second development application for the Property. Its second application requested two special exceptions: (1) one for an amusement/recreational facility; and (2) another for a PUD.

16. On May 26, 1993, the Staff held a pre-development meeting to discuss Plaintiff's second development application. Defendant Kenney, an Escambia County employee for nineteen years, attended the May 26, 1993, pre-development meeting at the express invitation of Defendant Page. Defendant Kenney worked as an assistant to Defendant Lee who was an Escambia County Commissioner at all relevant times hereto. Defendant Kenney resided at Perdido Key. Defendant Kenney had not attended a pre-development meeting during the nineteen years she worked for Defendant Escambia, and she had never been personally notified or invited to do so until such meeting. Defendant Page arranged for Defendant Kenney to attend the meeting knowing that (a) she was an employee of Escambia County and worked for Defendant Lee, (b) she had no responsibility, authority or duty in her job capacity with Escambia County which entitled her to attend such meeting, (c) she openly opposed Plaintiff's development, (d) she lived on Perdido Key, and (e) she was acting in concert with other property owners on Perdido Key to oppose Plaintiff's development.

17. During the meeting, Staff disclosed its intent to recommend approval of Plaintiff's second application but Defendant Page told Plaintiff that he recommended denial of Plaintiff's second development application despite the fact that his own staff recommended its approval. In order to obtain a development permit, Defendant Page told Plaintiff that Plaintiff would be required to present its application itself to the Escambia County Zoning Board of Adjustment ("ZBA") and

convince the ZBA that Plaintiff met the criteria. No previous applicant had ever been required to make such a presentation to the ZBA.

18. During the May 26, 1993, pre-development meeting, Defendant Minshew, an attorney employed by Defendant Escambia County, advised the Staff to reject Plaintiff's second application. Defendant Minshew stated that Plaintiff is an out-of-state developer and that the residents of Escambia County opposed a Campground on Perdido Key. Defendant Minshew offered that Plaintiff's development was a "political issue" and that Staff should protect the citizens of Perdido Key, Florida, by denying Plaintiff's application.

19. On June 8, 1993, Defendant Minshew instructed Staff, which had previously approved Plaintiff's second development application, to continue its review of compatibility guidelines and support for a PUD requirement in a Coastal High Hazard Area. Defendant Minshew informed the Staff that its involvement at the June 9, 1993, Escambia County Zoning Board of Adjustment ("ZBA") meeting would be limited and that Plaintiff had the burden to prove to the ZBA that its project met the required criteria. Defendant Minshew additionally advised that Plaintiff's second development application should not be presented to the ZBA because it was not complete even though it was standard procedure for Staff to submit similarly situated applications to the ZBA for approval.

D. The ZBA Meeting

20. On June 9, 1993, the ZBA met to consider, among other items, Plaintiff's second development application. On that date, but prior to the meeting, Robert Koncar, the Escambia County Administrator, learned of Staff's approval of Plaintiff's application and criticized Defendant Page for allowing the Staff to make such recommendation which is considered to be politically incorrect.

21. During the June 9, 1993, ZBA hearing, Defendants consistently violated Plaintiff's due process and property rights. For example:

a. the ZBA improperly considered evidence which was comprised of petitions signed by Escambia County residents who opposed Plaintiff's development. These petitions were irrelevant and highly prejudicial because they did not address the factors needed to satisfy PUD criteria. Such petitions became part of the "record" transmitted on appeal of Plaintiff's second development application to the Escambia County Board of County Commissioners;

b. Plaintiff was required to make a presentation to the ZBA to prove that its project met all applicable criteria. No other applicant, before or since, had been required to do so. After opening remarks, Plaintiff offered to address each of the eleven criteria items to the ZBA, at which time the ZBA assured Plaintiff that such would not be necessary;

c. After Plaintiff's presentation, Staff made a presentation to the ZBA and recommended contingent approval of Plaintiff's second development application. During Staff's presentation, Defendant Minshew repeatedly advised the Staff member making the presentation to the ZBA that such Staff member failed to mention that Plaintiff's development had been evaluated as a PUD in a Coastal High Hazard Area. The Staff member, at the insistence of Defendant Minshew and fearful of making a mistake, stated to the ZBA that the project was evaluated as a PUD in a Coastal High Hazard Area. Defendant Minshew directed the Staff member to make such statement despite the fact that Defendant Minshew knew such statement was false and that no requirements existed for a PUD in a Coastal High Hazard Area;

d. After the Staff presentation, Defendant Lee, an Escambia County Commissioner, spoke against Plaintiff's project. Defendant Kenney worked for Defendant Lee. Defendant Lee did not reside or own property on Perdido Key, and Perdido Key was not within Defendant Lee's electoral district. Defendant Lee spoke against Plaintiff's development despite the fact that Defendant Lee in his quasi-judicial authority as a member of the Escambia County Board of County Commissioners ("BCC") would hear Plaintiff's appeal from the ZBA;

e. Numerous speakers offered personal opinions at the ZBA hearing and successfully offered into the record irrelevant, unreliable documents and photographs to confuse and prejudice the members of the ZBA. These documents and photographs became part of the record and were transferred to the BCC for appellate review; and

f. Following the presentations and comments, the ZBA proceeded to make its decision. Instead of lawfully conducting their business in public, members of the ZBA and Defendant Minshew left the hearing room and engaged in *ex parte* communications. Following the *ex parte* meeting with Defendant Minshew, the ZBA summarily denied Plaintiff's second application for development.

22. Following the June 9, 1993, ZBA hearing, Defendant Minshew continued to instruct the

Staff that since the Property is situated in a Coastal High Hazard Area, Plaintiff could only develop its Property by complying with the requirements for a PUD. Defendant Minshew's efforts to supplement the record of the June 9, 1993, ZBA hearing persisted despite the fact that the official record was closed at the conclusion of the June 9, 1993, ZBA meeting.

23. Plaintiff timely appealed to the BCC from the ZBA's June 9, 1993, decision denying Plaintiff's second development application on the Property. In July, 1993, Plaintiff met with Staff and inquired about the appeal process and alternative resolutions of the dispute over Plaintiff's second development application. Defendant Minshew attended the meeting and although the Staff sought to be conciliatory, Defendant Minshew told Plaintiff to hire an attorney since Defendant Escambia County did not mind, and was not afraid of, a lawsuit with Plaintiff over its appeal.

E. The Soil Analysis

24. In July, 1993, during the pendency of Plaintiff's appeal to the BCC, one of the Perdido Key residents leading the public opposition to Plaintiff's development approached and asked an official from the U.S. Department of Agriculture Soil Conservation Service to conduct a soil analysis of the Property. Such resident was told that only a County Commissioner or landowner is authorized to order a soil analysis. Thereafter, the Perdido Key resident contacted Defendant Lee's office and requested that Defendant Lee's aide, Defendant Kenney, ask Defendant Lee to order a soil analysis. Defendant Kenney, aware that such resident actively opposed Plaintiff's development, agreed to use her public office to assist the Perdido Key resident in obtaining a soil analysis of the Property.

25. On July 12, 1993, Defendant Kenney sent a memo from Defendant Lee to the U.S. Department of Agriculture Soil Conservation Service requesting a soil analysis on the Property. On the following day, Defendant Lee received the original soil analysis on the Property. In addition,

a copy of the soil analysis was furnished to each of the other Escambia County Commissioners. By July 29, 1993, the date the appeal on the Petitioner's second application for development was heard, each member of the Escambia County Board of County Commissioners had in their possession the soil test obtained by Defendant Lee and Defendant Kenney in violation of Plaintiff's rights. Such test was not part of the official record and could not lawfully have been considered by the BCC.

26. On July 19, 1993, the Escambia County Administrator, Robert Koncar, sent a memo with letters from Perdido Key residents to Defendant Page, urging Defendant Page to use the letters to oppose Plaintiff's development during the July 29, 1993, BCC meeting. Koncar intended that the letters should be considered by the BCC as part of the record, even though such letters were received after the June 9, 1993, ZBA meeting and after the close of the record before the ZBA. Despite receiving copies of such memo, neither Defendant Minshew nor Escambia County Attorney, David Tucker, advised the BCC not to consider the letters. Defendant Page subsequently furnished the letters to the BCC as part of the record. On July 27, 1993, two days before the BCC hearing, Defendant Page sent a memo to the members of the BCC inviting them to contact him to find out what residents of Perdido Key were saying about Plaintiff's development project.

27. In accordance with the Escambia County Ordinance Code 89-6, Article VIII, Section 2, Paragraph 6, the ZBA was required to issue Findings of Fact ("Findings") and Conclusions of Law ("Conclusions") within 15 days after the June 9, 1993, ZBA hearing. On July 14, 1993, the ZBA held a meeting. One purpose of the meeting was to adopt and ratify the Findings and Conclusions on Plaintiff's second development application. At such meeting the ZBA voted to delay ratification of the Findings and Conclusions. As a result, Plaintiff was forced to prosecute and appeal to the Escambia BCC without ever having seen a final order from the ZBA.

F. The July 29, 1993 BCC Hearing

28. The BCC was scheduled to hear the appeal from the ZBA's denial of Plaintiff's second development application on July 29, 1993. Prior to July 29, 1993, Defendant Minshew privately met with County Commissioner Willie Junior. At that time, Defendant Minshew drafted a motion upholding the ZBA's denial of Plaintiff's second development application. Although Defendant Minshew drafted the motion prior to the BCC hearing on Plaintiff's second development application, the motion provided only for denial of Plaintiff's appeal. Further, Defendant Minshew failed to maintain copies of the hand-written and typed versions of the motion prepared for County Commissioner Willie Junior. Defendant Minshew additionally met with County Commissioner Steve Del Gallo prior to the July 29, 1993, BCC meeting to discuss Plaintiff's development application.

29. On July 29, 1993, the BCC heard the appeal from the ZBA's denial of Plaintiff's second development application. The record provided by Defendant Page to the BCC contained incomplete and inaccurate information. The record included irrelevant and prejudicial evidence admitted by the ZBA in the form of petitions and letters from opponents to Plaintiff's project. In addition, no final Findings and Conclusions from the ZBA were in existence. Instead, Defendant Minshew read aloud an unratified and unadopted draft of the Findings and Conclusions with full knowledge that the ZBA had never approved them. The Findings and Conclusions read by Defendant Minshew to the BCC substantially differed from the Findings and Conclusions ultimately ratified and adopted by the ZBA on September 8, 1993.

30. At the July 29, 1993, BCC hearing, Defendant Lee presented numerous letters from Perdido Key residents opposed to Plaintiff's project. Defendant Lee's actions were improper, among other reasons, because Defendant Lee should not have taken any action with respect to Plaintiff's second development application after publicly speaking out against such application at the June 9,

1993, ZBA meeting; and no new factual matters should have been introduced into the record after June 9, 1993. When Plaintiff objected to Defendant Lee's conduct, Defendant Lee recused himself from the appeal.

31. During the July 29, 1993, BCC meeting, Defendant Minshew knowingly and intentionally misstated to the BCC the law relating to the requirements for a PUD in a Coastal High Hazard Area. Defendant Minshew knowingly and intentionally misled the BCC to believe that a procedure existed for developing land as a PUD in a Coastal High Hazard Area. Defendant Minshew did this despite the fact that Staff had thoroughly researched this issue, at Defendant Minshew's direction, and informed her that no such procedure existed under Florida law, practice or procedure.

32. The BCC subsequently denied Plaintiff's appeal.

G. Findings and Conclusions

33. The Code required that the ZBA furnish Plaintiff with Findings and Conclusions within 15 days after the June 9, 1993, ZBA hearing. Following the June 9, 1993, ZBA hearing, Defendant Minshew assigned the task of drafting the Findings and Conclusions to a member of the Staff. The Staff member was instructed to draft Findings and Conclusions and forward them to Defendant Minshew for revision. Defendant Minshew reviewed, revised and returned each such draft to the Staff for completion.

34. After such process had been repeated six times, the Staff ceased to draft the Findings and Conclusions because Defendant Minshew continued to include false and misleading statements in the Findings and Conclusions. For example:

a. The Staff's draft of the Findings and Conclusions contained only one special exception, the one relating to a recreational use in a C-1 Zoning District. Defendant Minshew edited the Findings and Conclusions to state that Plaintiff failed to meet the criteria for a PUD in a Coastal High Hazard Area. Defendant Minshew included this statement despite the fact that Defendant knew that no requirements existed for a PUD in a Coastal High Hazard Area;

b. Defendant Minshew included the false statement that the Staff had reviewed Plaintiff's project and found Plaintiff's project to be inconsistent with the Comprehensive Plan;

c. Defendant Minshew included the false statement that the Staff, by letter dated June 4, 1993, informed Plaintiff that its development application was inconsistent with the Comprehensive Plan. A letter was sent, however, by

d. Defendant Minshew deleted two true statements from the Findings and Conclusions relating to Plaintiff's traffic and solid waste approvals; and

e. Defendant Minshew incorrectly stated in the Findings and Conclusions that Plaintiff failed to meet its burden of proof entitling it to the special exception.

35. The ZBA met on August 11, 1993, to consider approval of the Findings and Conclusions. Although the Staff's standard procedure was to notify an applicant of such a meeting, no notice was given to Plaintiff.

36. At the August 11, 1993, ZBA meeting, no transcript of the June 9, 1993, hearing was furnished. Despite the efforts and attempts by Defendant Minshew to cause the ZBA to approve her proposed Findings and Conclusions, several members of the ZBA declined to do so because they continued to contain incorrect findings of fact and conclusions of law. Defendant Escambia County did not furnish Plaintiff final Findings and Conclusions until December 9, 1993, six months after the June 9, 1993, hearing.

H. Complaint and Petition for Writ of Certiorari

37. Plaintiff timely appealed the BCC ruling which upheld the ZBA's denial of Plaintiff's second development application by filing its Complaint and Petition for Writ of Certiorari in Case No. 93-1327-CA-01, styled *GJR Investments, Inc. vs. Escambia County, The Board of County Commissioners of Escambia County, Zoning Board of Adjustment of Escambia County,* in the Circuit Court, First Judicial Circuit in and for Escambia County, Florida (the "Certiorari Lawsuit").

I. Plaintiff's Third Development Application

38. On August 5, 1993, GJR submitted its third development application to develop a

Campground on the Property. Plaintiff's third development application did not seek any special exceptions, but sought to develop the Property as a permitted use in a C-1 District. By letter dated August 23, 1993, Defendant Page informed Plaintiff that Plaintiff's Third Development Application had been administratively "rejected."

J. The Declaratory Judgment Lawsuit

39. On September 16, 1993, Plaintiff filed its Petition for Declaratory Relief in Case No. 93-1442-CA-01, styled *GJR Investments, Inc. vs. Escambia County, a Political Subdivision of the State of Florida,* in the Circuit Court, First Judicial Circuit in and for Escambia County, Florida (the "Declaratory Judgment Lawsuit"). In that suit, Plaintiff asked the Court to declare that development of the Property as a "campground," as requested by Plaintiff's third development application, was a permitted use under the Code. Plaintiff additionally requested the Court to declare that Plaintiff was entitled to have its third development application approved without delay.

40. In March, 1994, Plaintiff and Defendant Escambia County reached an agreement whereby Plaintiff would submit a fourth development application to develop a Campground on the Property as a permitted use in a C-1 District. On or about March 22, 1994, Plaintiff submitted its fourth development application. Thereafter, on or about March 30, 1994, Staff approved Plaintiff's fourth development application.

41. On or about June 8, 1994, the ZBA approved Plaintiff's fourth development application for development of a Campground on the Property.

42. Plaintiff subsequently dismissed both the Certiorari Lawsuit and the Declaratory Judgment Lawsuit.

L. *Damages*

43. As a result of the unlawful conduct of Defendants, Plaintiff incurred unnecessary (a)

consulting and engineering fees, (b) attorneys' fees, (c) taxes and insurance premiums on the Property from June 9, 1993, to June 8, 1994, and additionally suffered lost profits and increased development and ownership costs.

V. *First Cause of Action—42 U.S.C. § 1983*

44. Plaintiff hereby reasserts and realleges Paragraph 9 through Paragraph 43 as if such paragraphs were fully set forth at length.

45. At all times herein, the acts of the Defendants, as contained in Paragraph 9 through Paragraph 43, were committed under color of state law.

46. The actions of Defendant Minshew, Defendant Lee, Defendant Kenney, and Defendant Page, as set forth above, were committed by such Defendants even though the law establishes the contours of Plaintiff's rights so clearly that a reasonable official would have understood that such acts were unlawful.

47. Defendant Escambia County, acting by and through the BCC and the ZBA as set forth above, which possessed and exercised final authority on behalf of Defendant Escambia County with respect to the issuance of Plaintiff's application for a development permit, committed acts and subscribed to official policies or customs in violation of Plaintiff's rights.

48. Plaintiff, by virtue of its ownership of the Property and by virtue of its good faith reliance and change of position based upon Defendant Escambia County's zoning of the Property and land use regulations, has a property interest worthy of constitutional protection. Plaintiff also has a general right to be free from abuses of governmental power worthy of constitutional protection. Plaintiff further has a right not to have its property taken without payment of just compensation.

49. Defendants' actions were arbitrary and capricious in that Defendants acted with an improper motive, without reason, or upon a reason that was merely pretextual.

50. The actions of the Defendants deprived Plaintiff of rights, privileges, or immunities secured to Plaintiff by the U.S. Constitution in violation of 42 U.S.C. § 1983.

51. As a result of the unlawful acts of Defendants, Plaintiff suffered actual damages in excess of $500,00.00.

52. The unlawful acts of Defendants, as set forth above, were committed intentionally, with reckless indifference, or with malice to the federally protected rights of Plaintiff. Plaintiff is therefore entitled, pursuant to 42 U.S.C. § 1983, to recover exemplary damages in the amount of $5,000,000.00.

53. Plaintiff additionally requests that the Court, in its discretion, award Plaintiff reasonable and necessary attorney's fees as part of the costs of this case pursuant to 42 U.S.C. § 1988.

VI. *Second Cause of Action—Conspiracy to Violate 42 U.S.C. § 1983*

54. In the alternative, and without waiver of the foregoing, Plaintiff asserts the following.

55. Plaintiff hereby reasserts and realleges Paragraph 9 through Paragraph 43 as if such paragraphs were fully set forth at length.

56. At all times herein, the acts of the Defendants, as contained in Paragraph 9 through Paragraph 43, were committed under color of state law. Defendant Escambia County, acting by and through the BCC and the ZBA as set forth above, which possessed and exercised final authority on behalf of Defendant Escambia County with respect to the issuance of Plaintiff's application for a development permit, committed acts and subscribed to official policies or customs in violation of Plaintiff's rights.

57. Defendants, together with other unknown persons, conspired to use unlawfully legal processes to prevent Plaintiff's development of its Property for the purposes, among others, of protecting Defendants' political constituents, advancing Defendants' political ambitions and

aspirations, and promoting Defendants' other self interests. In furtherance of such conspiracy, Defendants, along with other unknown persons, committed overt acts jointly or in concert in furtherance of such conspiracy.

58. Plaintiff has a right to be free from abuses of governmental power worthy of constitutional protection.

59. Defendants acted with an improper motive, without reason, or upon a reason that was merely pretextual to delay and prevent Plaintiff from obtaining a permit to develop its Property.

60. The actions of the Defendants deprived Plaintiff of the rights, privileges, or immunities which are secure to Plaintiff under the U.S. Constitution in violation of 42 U.S.C. § 1983.

61. As a result of the unlawful acts and conspiracy committed as aforesaid by Defendants, Plaintiff suffered actual damages in excess of $500,000.00

62. The unlawful acts and conspiracy of Defendants, as set forth above, were committed intentionally, with reckless indifference, or with malice to the federally protected rights of Plaintiff. Plaintiff is therefore entitled, pursuant to 42 U.S.C. § 1983, to recover exemplary damages in the amount of $5,000,000.00.

63. Plaintiff additionally requests that the Court, in its discretion, award Plaintiff reasonable and necessary attorney's fees as part of the costs of this case pursuant to 42 U.S.C. § 1988.

### VII. *Third Cause of Action—Fifth Amendment Taking*

64. In the alternative, and without waiver of the foregoing, Plaintiff asserts the following.

65. Plaintiff hereby reasserts and realleges Paragraph 9 through Paragraph 43 as if such paragraphs were fully set forth at length.

66. Defendant Escambia County, acting by and through the BCC and the ZBA as set forth above, which possessed and exercised final authority on behalf of Defendant Escambia County with

respect to the issuance of Plaintiff's application for a development permit, committed acts and subscribed to official policies or customs in violation of Plaintiff's rights.

67. The actions of Defendant Escambia County, by and through its employees and elected officials, including Defendant Minshew, Defendant Lee, Defendant Kenney, and Defendant Page, deprived Plaintiff of the immediate use of the Property, thereby effectively denying Plaintiff the economic benefits of the Property.

68. Such actions constitute a temporary taking of Plaintiff's property from June 9, 1993, to June 8, 1994, without payment of just compensation to Plaintiff in violation of the Fifth Amendment as made applicable to the states by the Fourteenth Amendment.

69. As a result of Defendant Escambia County's actions, by and through its employees and elected officials, including Defendant Minshew, Defendant Lee, Defendant Kenney, and Defendant Page, Plaintiff suffered actual damages in excess of $500,000.00.

70. Plaintiff additionally requests that the Court, in its discretion, award Plaintiff reasonable and necessary attorney's fees as part of the costs of this case.

VIII. *Jury Demand*

71. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that upon final trial, Plaintiff have judgment of and from the Defendants, jointly and severally, as follows:

a. compensatory damages in the amount of $500,000.00;

b. exemplary damages in the amount of $5,000,000.00;

c. all reasonable and necessary attorney's fees and all costs incurred herein;

d. all pre-judgment and post-judgment interest to which Plaintiff is entitled;

e. such other and further relief, both at law and in equity, to which Plaintiff may show itself justly entitled to receive.

Respectfully submitted,

By:      /s/ Marvin D. Nathan

Marvin D. Nathan

Texas Bar No. 14817000

Robert S. DuBoise

Texas Bar No. 00783990

2700 Post Oak Blvd., Suite 2500

Houston, Texas 77056-5705

713.960.0303

Fax: 713.892.4800

OF COUNSEL:

NATHAN, WOOD & SOMMERS

A Professional Corporation

2700 Post Oak Blvd., Suite 2500

Houston, Texas 77056-5705

713.960.0303

Fax: 713.892.4800

-and-

/s/ Paul M. Harden

Paul M. Harden

Florida Bar No. 192557

2601 Gulf Life Tower

Jacksonville, Florida 32207

904.396.5731

ATTORNEYS FOR PLAINTIFF GJR INVESTMENTS, INC.

OF COUNSEL:

LAW OFFICES OF PAUL M. HARDEN

2601 Gulf Life Tower

Jacksonville, Florida 32207

904.396.5731

PLAINTIFF'S EXHIBIT "A"

LEGAL DESCRIPTIONS

*TRACT I:*

A portion of Section 35, Township 3 South, Range 32 West, Escambia County, Florida, being more particularly described as follows:

Commence at the Northwest corner of Government Lot 2 of the aforesaid Section 35; thence go South 88°30′59″ East along the North line of the aforesaid Government Lot 2 a distance of 500.00 feet; thence go South 01°3′12″ West a distance of 649.10 feet to a point of intersection with the Southerly right-of-way line of New Gulf Beach Highway (S.R. # 292, 100′ R/W) and the Point of Beginning; thence run North 65°5′48″ East along said Southerly right-of-way line a distance of 456.43 feet to the beginning of a curve concave Northwesterly and having a radius of 1196.28 feet; thence go Northeasterly along said Southerly right-of-way line and curve having a radius of 1196.28 feet, an arc distance of 86.43 feet (CH = 86.41′ CH BRG = North 63°49′38″ East); thence departing said Southerly right-of-way line, go South 01°32′12″ West a distance of 448.76 feet to point on the state of Florida Department of Natural Resources Coastal Construction setback line as recorded in

Plat Book 13 at Page 23 of the Public Records of Escambia County, Florida, said point hereinafter referred to as a point "A", thence continue South 01°32′12″ West a distance of 325 feet more or less to the mean high water line of the Gulf of Mexico;  thence meander Westerly along said mean high water line to a point of intersection with a line passed through the Point of Beginning and having a bearing of South 01°32′12″ West;  thence go North 01°32′12″ East along said line passed through the Point of Beginning a distance of 335 feet more or less to a point on the aforesaid coastal construction setback line, said point lying South 82°5″24″ West a distance of 494.55 feet from the aforesaid Point "A";  thence continue North 01°32′12″ East a distance of 290.83 feet to the Point of Beginning.

*TRACT II:*

A portion of Section 35, Township 3 South, Range 32 West, Escambia County, Florida, being more particularly described as follows:

Commence at the Northwest corner of Government Lot 2 of the aforesaid Section 35;  thence go South 88°30′59″ East along the North line of the aforesaid Government Lot 2 a distance of 500.00 feet to the Point of Beginning;  thence continue South 88°30′59″ East a distance of 793.71 feet to a point of intersection with the curved Northerly right-of-way line of New Gulf Beach Highway (S.R. # 292, 100′ R/W), being concave Northwesterly and having a radius of 1096.28 feet;  thence go Southwesterly along said curved right-of-way line an arc distance of 564.98.feet (CH = 558.75′ CH BRG = South 51°07′7″ West) to the Point of Tangency;  thence continue along said Northerly right-of-way line South 65°53′8″ West a distance of 408.44 feet;  thence departing Said Northerly right-of-way line go North 01°32′12″ East a distance of 538.17 feet to the Point of Beginning.