[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 17, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-14349

_____

D.C. Docket No. 02-02721-CV-CAP-1

E. RANDEL T. OSBURN, LINDA DUBOSE,
BRENDA LOWE CLEMONS, DOROTHY PERRY,
WENDELL MUHAMMAD,

Plaintiffs-Appellants,

versus

CATHY COX, Secretary of State of Georgia,
LINDA LATIMORE , Dekalb County Elections
Supervisor, LYNN LEDFORD, Gwinnett County
Elections Supervisor, GEORGIA DEMOCRATIC
PARTY, STATE OF GEORGIA, et al.

Defendants-Appellees,

DENISE MAJETTE, et al.,

Defendants.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

**(May 17, 2004)**

Before EDMONDSON, Chief Judge, HULL, Circuit Judge, and BUCKLEW*, District Judge.

BUCKLEW, District Judge:

On August 20, 2002, the only two individuals listed on the ballot in the Democratic Primary election for the United States Congress in the Fourth District of Georgia, which spans Dekalb and Gwinnett Counties, were Denise Majette and incumbent Congresswoman Cynthia McKinney, both of whom are African-American women. Majette defeated incumbent Congresswoman McKinney by over 15,000 votes. On November 5, 2002, Majette won the general election and a seat in the United States Congress.

Five registered voters from the Fourth Congressional District of Georgia who voted in the Democratic Primary filed a complaint in the district court raising various challenges to Georgia's primary election system. Georgia's primary election system does not require voters to register by party affiliation. Once registered to vote, a voter may choose in which political party's primary to vote on the day of the election by requesting the appropriate ballot. In other words, a Republican voter can lawfully vote in a Democratic primary and vice versa. Furthermore, that same Republican voter could vote in the Republican Party's

_____

*Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida, sitting by designation.

2

Primary in the next election. In this challenge to the Georgia "open primary," as this form of primary election is called, the Plaintiffs originally named as Defendants the Secretary of State of Georgia, DeKalb County Elections Supervisor, Gwinnett County Elections Supervisor, the Georgia Democratic Party, the Georgia Republican Party, the DeKalb County Republican Party, and Congresswoman Majette.

Most of the Defendants moved to dismiss the complaint. Prior to the district court ruling on the motions to dismiss, the Plaintiffs voluntarily dismissed the Georgia Republican Party, the DeKalb County Republican Party and Congresswoman Majette from the case and moved to amend their complaint. The Plaintiffs sought to amend the complaint to restate their claims and to add the State of Georgia, Governor of the State of Georgia, DeKalb County Board of Elections and Registration, and Gwinnett County Board of Elections and Registration as Defendants. The district court granted the Plaintiffs' motion to amend, and all Defendants except Defendants DeKalb County Supervisor of Elections and DeKalb County Board of Elections and Registration (collectively "DeKalb Defendants") then moved to dismiss the amended complaint.

The gravamen of the Plaintiffs' amended complaint was that the Georgia and DeKalb County Republican party members conceived a plan to run a candidate (Majette) in the Democratic Primary, funded that candidate, and then encouraged

Republican voters to crossover and vote for that candidate. The amended complaint alleged that, as a result, the preferred candidate of Democratic voters, McKinney, was defeated by the vote of the Republicans who crossed over and voted in the Democratic primary. Plaintiffs alleged that the crossover voting of the Republicans impermissibly diminished and interfered with the voting strength of African-American voters in the Fourth Congressional District on account of race.

The amended complaint set forth three separate causes of action: (1) that the open primary violated Plaintiffs' equal protection rights under the Fourteenth Amendment and their rights under the Fifteenth Amendment, as protected by the Civil Rights Act, 42 U.S.C. § 1983 (Count I); (2) that Georgia's open primary system violated the Plaintiffs' associational rights under the First Amendment as protected by the Civil Rights Act, 42 U.S.C. § 1983 (Count II); and (3) that the open primary violated Plaintiffs' rights under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 (Count III). Plaintiffs sought declaratory and injunctive relief in their amended complaint. Specifically, Plaintiffs sought, among other remedies, to have the results of the August 2002 Democratic Primary and the November 2002 General Election for the Fourth Congressional District declared void, to have Georgia's present open primary system declared violative of Section 2 of the Voting Rights Act, and to have the use of the open primary in the Democratic primaries in Fourth Congressional District of Georgia enjoined.

On August 1, 2003, the district court issued an order, granting the motions to dismiss and dismissing the case without prejudice against all of the Defendants, and entered judgment for the Defendants.[1] The district court determined that the Plaintiffs had no standing to raise a First Amendment claim and had presented no facts sufficient to support any showing of violations of either their Fourteenth or Fifteenth Amendment rights. The court rejected the Plaintiffs' Voting Rights Act claim as well, finding that the Plaintiffs' allegations were insufficient to state a claim for denial or abridgement of the right to vote. Plaintiffs now appeal.

I.

Plaintiffs allege that Georgia's open primary system infringed upon their First Amendment right of association.[2] Plaintiffs argue that by having a primary system in which all voters, regardless of personal political affiliation are permitted to vote in the Democratic Primary in the Fourth Congressional District, the State of

---

[1]Although the DeKalb Defendants did not file a motion to dismiss, the district court noted that the DeKalb Defendants raised the defense of failure to state a claim in their answer and *sua sponte* granted dismissal of the action as against the DeKalb Defendants because the district court found that the amended complaint failed to state a claim as a matter of law.

[2]The First Amendment to the U.S. Constitution provides:
> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I. The Supreme Court has recognized "as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Roberts v. United States Jaycees, 468 U.S. 609, 622, 104 S. Ct. 3244, 3252 (1984).

Georgia has interfered with the right of the Plaintiffs and other Democratic voters to choose the nominees of their political party.

The district court interpreted the Supreme Court's decision in <u>California Democratic Party v. Jones</u>, 530 U.S. 567, 120 S. Ct. 2402 (2000),[3] to hold that the standing to challenge a state's regulation of a political party's primary belongs only to the party itself, and, therefore, the Plaintiffs in this case lacked standing to bring their First Amendment right of association claim.  Plaintiffs argue that the Supreme Court in <u>Jones</u> does not hold that the standing to bring a right of association claim belongs solely to the political party.  Plaintiffs assert that the Supreme Court has not held, nor even implied, that individuals have no First Amendment associational rights concurrent with the political parties.

Although the Supreme Court has not explicitly said that only the party proper, and not individual members of the party, may challenge a state's regulation of a political party's primary, the case law points toward such a result.  In <u>Democratic Party of the United States v. Wisconsin</u>, 450 U.S. 107, 101 S. Ct. 1010 (1981), the Supreme Court upheld a challenge by the national Democratic Party to Wisconsin's election laws.  The election laws at issue essentially forced the

_____

[3]The Supreme Court in <u>Jones</u> concluded that California's adoption of a blanket primary, which permitted all voters to vote in the primary for any candidate regardless of the candidate's political affiliation, against the wishes of the state's political parties, was violative of the associational rights of the political parties.  <u>Jones</u>, 530 U.S. at 586, 120 S. Ct. at 2414.

6

Democratic Party to seat at their conventions delegates chosen in state selection processes that did not conform to the party's national charter limiting participation in choosing Democratic delegates to members of the Democratic Party. Id. at 109-11, 101 S. Ct. at 1012-14. The Supreme Court held that the Wisconsin election laws unconstitutionally infringed on the Democratic Party's right "to define their associational rights by limiting those who could participate in the processes leading to the selection of delegates to their National Convention." Id. at 122, 101 S. Ct. at 1019.

In Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 107 S. Ct. 544 (1986), the Supreme Court examined a challenge by the Republican Party of Connecticut to Connecticut's *closed* primary system, in which the Republican Party was not allowed to invite independent voters (i.e., voters not affiliated with any political party) to participate in the Republican primary and to help choose the Republican candidate. The Court held that the First Amendment protects a party's right to invite independent voters to participate in the primary. Id. at 224, 107 S. Ct. at 554.

While these cases have upheld a political party's right to both expand and limit the persons that the party wishes to include in its primary elections, it was the political party in each case that was entitled to decide who would be involved in the decision making process, not individual members of the party. In fact, there

are no cases directly on point, i.e., no cases in which individual plaintiffs alone have been found to be entitled to such rights.

Instead, the case law weighs against an individual's right to assert such a claim and is buttressed by the fact that the relief that Plaintiffs seek, i.e., to limit the voters who could participate in a Democratic primary to those who Plaintiffs consider to be "Democratic voters," would likely be held unconstitutional if challenged by the state political party. The Supreme Court in Tashjian held that a state may not limit who a party may invite to participate in its primary election. Id. at 225, 107 S. Ct. at 554. Therefore, the remedy sought by Plaintiffs imposing such a limit on the Democratic Party of Georgia would likely be unconstitutional. See id. Accordingly, this Court finds that the Plaintiffs lack standing to assert their First Amendment claim.

## II.

Plaintiffs' amended complaint alleged that the State of Georgia's adoption of the open primary system was done intentionally and for the purpose of discriminating against African-American voters, whose membership includes the Plaintiffs. The district court found that the Plaintiffs had not presented facts sufficient to support any showing of violations of either their Fourteenth or Fifteenth Amendment rights.

8

To establish a Fourteenth Amendment claim, the Plaintiffs must not only plead that they lack the equal opportunity to participate in the political process, but must also demonstrate that this inequality results from the open primary system and that a racially discriminatory purpose underlies that system.  See Johnson v. DeSoto, 204 F.3d 1335, 1345 (11th Cir. 2000) (citing Lucas v. Townsend, 967 F.2d 549, 551 (11th Cir. 1992)).

In conjunction with their Fourteenth Amendment claim, Plaintiffs also raise a claim under the Fifteenth Amendment[4] to the U.S. Constitution.  The Supreme Court has recognized that the Fifteenth Amendment protects the right to register and to vote, but it has never held or even suggested that vote dilution violates the Fifteenth Amendment.  Reno v. Bossier Parish Sch. Bd., 528 U.S. 320, 334 n.3, 120 S. Ct. 866, 875 n.3 (2000).

Plaintiffs do not allege that they were prevented from registering to vote or from voting at all.  Instead they allege that they were outvoted in relation to selecting the candidate of their preference.  The claim does not identify the violation of any fundamental right in relation to voting.  On its face, the amended complaint fails to state a claim for either a Fourteenth or Fifteenth Amendment

---

[4]The Fifteenth Amendment to the U.S. Constitution provides:
> The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color or previous condition of servitude.

U.S. CONST. amend. XV, § 1.

violation. See GJR Investments, Inc. v. County of Escambia, 132 F. 3d 1359, 1367 (11th Cir. 1998)(requiring that a § 1983 plaintiff allege with some specificity the facts that make out its claim); see also Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003)(discussing heightened pleading requirement for civil rights cases).

III.

Plaintiffs argue that Georgia's open primary system has the purpose and effect of denying or abridging their vote on account of race in violation of Section 2 of the Voting Rights Act. Plaintiffs contend that the amended complaint clearly states that black voters are politically cohesive and that white voters voted in a bloc in the primary to defeat the black voters' preferred candidate.

The district court rejected this claim finding that the Plaintiffs' allegations failed to state a claim for denial or abridgement of the right to vote. The district court also noted that both former Congresswoman McKinney and incumbent Congresswoman Majette are African-American and that factor was one that belied the Plaintiffs' legal claims of discrimination in the electoral system.

Section 2 of the Voting Rights Act states, in relevant part, that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 42 U.S.C. § 1973(a).

10

To establish a violation of Section 2, this Court has held that:

> [A] plaintiff must prove invidious discrimination in order to establish a violation of [S]ection 2 of the Voting Rights Act. Specifically, the plaintiff may prove *either*: (1) discriminatory intent on the part of legislators or other officials responsible for creating or maintaining the challenged system; *or* (2) objective factors that, under the totality of the circumstances, show the exclusion of the minority group from meaningful access to the political process due to the interaction of racial bias in the community with the challenged voting scheme.

Nipper v. Smith, 39 F.3d 1494, 1524 (11th Cir. 1994); see also Brooks v. Miller, 158 F.3d 1230, 1237-38 (11th Cir. 1998). It is Plaintiffs' burden to show on the face of their amended complaint either a discriminatory purpose or effect demonstrating that members of the minority community contained within the Fourth Congressional District are unable to equally participate in the political processes leading to the nomination or election of a candidate of choice. Plaintiffs allege no discriminatory purpose, but instead claim there is a discriminatory effect in the operation of the open primary system.

A violation of Section 2 is established only if, based on the totality of the circumstances, minority plaintiffs can prove that they "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 42 U.S.C. § 1973(b); see also Chisom v. Roemer, 501 U.S. 380, 397, 111 S. Ct. 2354, 2365 (1991)("the inability to elect representatives of their choice is not sufficient to establish a [Section 2] violation

11

unless, under the totality of the circumstances, it can also be said that the members of the protected class have less opportunity to participate in the political process").

The facts alleged by Plaintiffs, i.e., that Republican voters crossed-over and voted for Majette rather than McKinney, do not demonstrate a violation of Section 2 of the Voting Rights Act.  The Plaintiffs have not alleged facts to support a claim that the minority group has been excluded from meaningful access to the political process due to the interaction of racial bias in the community with the challenged voting system.  See Nipper, 39 F.3d at 1524.

**AFFIRMED.**