Cheryl **MORTENSON**, Plaintiff,

v.

**CITY OF OLDSMAR, a Florida Municipality and Daryl Landis, Defendants.**

No. 97–2629–Civ–T–17C.

United States District Court, M.D. Florida, Tampa Division.

June 18, 1999.

Sherwood S. Coleman, Kwall, Showers & Coleman, P.A., Clearwater, FL, Louis Kwall, Kwall, Showers & Coleman, P.A., Clearwater, FL, for Cheryl Mortenson, plaintiff.

Thomas P. Scarritt, Davis & Scarritt, P.A., Tampa, FL, for City of Oldsmar, a Florida Municipality, defendant.

Christa L. Collins, James, Hoyer, Newcomer, Forizs & Smitjanich, P.A., Tampa, FL, for Daryl Landis, defendant.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant Landis' Motion for Partial Summary Judgment (Dkt.25), the Motion for Final Summary Judgment of Defendant City of Oldsmar (Dkt.27), and Plaintiff's Motion for Partial Summary Judgment (Dkt.33).

## I.  STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law.  Fed.R.Civ.P. 56(c).

> The moving party bears the initial responsibility of stating the basis for its absence of genuine issue of material fact.  The burden can be discharged by "showing . . . that there is an absence of evidence to support the non-moving party's case."  Celotex v. Catrett, 477 U.S. 317, 323, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "Issues of fact are genuine only if a reasonable jury considering the evidence presented could find for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Material facts are those which will affect the outcome of trial under governing law.  Id. at 248, 106 S.Ct. 2505.

In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  Sweat v. Miller Brewing Co., 708 F.2d 655 (11th Cir.1983).  All doubt as to the evidence of a genuine issue of material fact must be resolved against the moving party.  Hayden v. First National Bank of Mt. Pleasant, 595 F.2d 994, 996–997 (5th Cir.1979), quoting Gross v. Southern Railroad Co., 414 F.2d 292 (5th Cir.1969).

## II.  FACTUAL BACKGROUND

Plaintiff and Defendants present a myriad of factual allegations supplemented in the record by substantial testimony and other evidence.  Following is a summary of some of these allegations.

This action involves a suit by Plaintiff Cheryl Mortenson, a former employee of the Defendant City of Oldsmar ("City") and a former City Counsel member, Daryl Landis ("Defendant Landis").  Plaintiff's complaint consists of five Counts.  Counts I through IV of the Complaint are directed against the City of Oldsmar and include: (1) sexual discrimination and hostile work environment claim under Title VII of the Civil Rights Act of 1964;  (2) a retaliation claim under Title VII of the Civil Rights Act of 1964 as amended in 1991;  (3) a claim under the Florida Civil Rights Act of 1992;  and (4) a retaliation claim under the Florida Civil Rights Act of 1992.

Plaintiff asserts a state law claim for battery against Defendant Landis on Count V of the Complaint.  Plaintiff seeks compensatory damages against Landis.

Plaintiff Mortenson was employed from August 3, 1981 until April 15, 1997 as the duly appointed City Clerk of the Defendant City of Oldsmar.  Beginning in March 1995, Plaintiff alleges that she was forced to endure an openly hostile work environment initially created by Defendant Landis' unwelcome sexual advances, sexist comments and offensive unwelcome touching.  Plaintiff alleges that Defendant Landis at various times referred to Plaintiff as "babe," "honey," "mistress," and "sweetie."  Landis allegedly referred to the Plaintiff as his "mistress" in front of members of her staff.  Plaintiff frequently stated her objections to the manner of address and these remarks in a clear fashion to Defendant Landis.  Despite this, Landis continued to make these remarks.

Additionally, Plaintiff asserts that Defendant Landis engaged in offensive and unwelcome acts of a sexual nature such as flirting with the Plaintiff, putting his arm

around her at work, at work-related functions, and in front of other city personnel, and kissing the Plaintiff directly on the lips. Repeatedly, Plaintiff stated her objections to Landis about this behavior. Despite this, Plaintiff alleges Landis continued this course of conduct.

Plaintiff alleges that Mayor Beverland told Plaintiff in the presence of her staff that Defendant Landis had described Plaintiff's anatomy to him, and then Beverland proceeded to describe Plaintiff's anatomy himself, also in the presence of another employee. Plaintiff further asserts that Beverland frequently referred to "rumors" of a sexual affair between Defendant Landis and Plaintiff. Rather than taking actions to stop such behavior, Beverland allegedly would undermine the Plaintiff's authority.

Plaintiff further alleges that in response to actions of Beverland, Haddock and Defendant Landis, she made numerous complaints to the Defendant Oldsmar. She requested that action be taken on behalf of the Plaintiff to prevent the continuation of the hostile work environment created by this conduct, as well as to prevent it from recurring.

Plaintiff alleges that following her complaints of sexual harassment, on June 15, 1995 to City Attorney Bryan Kutchins and City Manager Bruce Haddock, she was stripped of significant assignments and responsibilities by Defendant Oldsmar. Further, in violation of the Charter of the City of Oldsmar, the Office of City Clerk was then placed under the control of City Manager, Bruce Haddock, thus diminishing her prior authority as City Clerk. On April 15, 1997, Plaintiff was fired from her job as City Clerk of the City of Oldsmar.

### III. MOTION BY DEFENDANT LANDIS FOR PARTIAL SUMMARY JUDGMENT

Plaintiff has asserted a state law claim for battery against Defendant Landis on Count V of the Complaint. In this Count, Plaintiff seeks compensatory damages against Defendant Landis. Defendant Landis seeks Partial Summary Judgement on the issue of whether the Plaintiff may seek, as an item of compensatory damage, any future wage loss reduction in earning capacity against Defendant Landis arising out of Plaintiff's termination as City Clerk by the City of Oldsmar City Council in April 1997.

In Plaintiff's Complaint, Plaintiff alleges a Count V battery complaint against Defendant Landis' unwelcome, offensive and unconsented touching and asks for compensatory damages. There is no mention of Defendant Landis' liability for Plaintiff's termination from the position of City Clerk in her Count V claim. Plaintiff's Count V claim is in regard to Defendant Landis' decision to embrace and kiss the Plaintiff at the Harbor Palms Park dedication on May 12, 1995.

Defendant Landis bases his argument on the fact that he was no longer a member of the City Council when the Plaintiff was terminated. Again, this conclusion has no relationship to the Count V claim and the request for compensatory damages.

The sole authority cited by Defendant Landis is a Northern District of Illinois case *Frank v. Township High School District 211,* 1998 U.S. Dist. LEXIS 4680 (N.D.Ill.1998). This case has no relevance to the issues presented by the Plaintiff. In *Frank,* the court reviewed whether back and front pay damages were appropriate based on specific circumstances of `Frank's claim. *Id.* at 14. Frank elected to retire two and half years before her retirement date. *Id.* at 4. She sought to recover back and front pay damages from her employer, claiming that she had not voluntarily retired, but had actually been discharged as a result of the harasser's conduct. *Id.* The court reasoned that any inference that Frank's resignation was the result of intolerable working conditions was negated by her continuing to work for two and half years before retiring. *Id.* at

14. Therefore Frank was not entitled to damages from her former employer arising from her decision to retire. *Id.*

Count V of the Plaintiff's Complaint seeks damages from Landis as an individual, as opposed to Frank, who sought damages not from the alleged harasser, but her employer.

Additionally, Plaintiff did not elect to retire and then seek damages as a result of her lost income. Instead, in this case Plaintiff was terminated after a lengthy period of conflict that is associated to her complaint that Defendant Landis and others created a hostile work environment by their conduct, including battery alleged in Count V of the Complaint.

Accordingly, the Count **denies** Defendant Landis' Motion for Partial Summary Judgment (Dkt.25) for failure to establish that there are no genuine issues of material fact as to Plaintiff's Count V claim.

## IV. MOTION BY DEFENDANT OLDSMAR FOR FINAL SUMMARY JUDGMENT

### A. Counts I and II

Defendant City of Oldsmar seeks the entry of summary judgment on Counts I and III, which state that the City violated Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992 by creating a hostile work environment.

■ Defendant City states that in order to prove a prima facie case of hostile work environment harassment under Title VII, the plaintiff bears the burden of proving: (1) she belongs to a protected class (2) she was subjected to unwelcome sexual harassment: (3) such harassment was based upon sex; (4) was sufficiently severe or pervasive to alter a term or condition of her employment and create an abusive work environment; (5) the sexual harassment was imputable to the employer. *See Degitz v. Southern Management Servs., Inc.,* 996 F.Supp. 1451 (M.D.Fla.1998), *citing Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987). Defendant City states that this burden of proof is applicable to claims brought under section 760.01, Florida Statutes (1995) as well as those brought under Title VII.

Defendant does not dispute that Plaintiff belongs to the protected class. However, Defendant disputes the remaining elements of the hostile work environment claim.

■ Additionally, in support of its argument, Defendant City cites the recent Supreme Court case *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Here, the Supreme Court clarified the three kinds of conduct that are not sexual harassment and which create a sexually objectionable environment. Such an environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so. See *Faragher* at 2283. Likewise, in determining whether a work environment is sufficiently hostile or abusive, courts must look at the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993)).

Defendant City continues in its analysis of *Faragher* by explaining that to insure that Title VII does not become a "general civility code," the Supreme Court held that the Act does not prohibit simple teasing offhand comments, isolated benign incidents or innocuous differences in the ways men and women interact with the same or opposite sex. *Id.*

However, Defendant City neglects to mention that in the continuation of the Supreme Court's opinion in *Faragher,* the Court further explains "that while indicating the substantive contours of the hostile

work environment forbidden by Title VII, our cases have established few definite rules for determining when an *employer* will be liable for a discriminatory action otherwise actionably abusive." *Id.* at 2284. There have been a myriad of cases in which the District Courts and Courts of Appeal have held employers liable on account of actual knowledge by the employer of sufficiently harassing knowledge by subordinates, which employers have done nothing to stop. *Id.* In such instances, the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy. *Faragher* at 2284, *quoting Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998). The *Faragher* Court also noted that there are many cases which have recognized that a supervisors conduct may have a greater impact than that of a colleague at the same level. Similar conduct by a supervisor is more apt to rise to the level of actionable harassment when compared with identical conduct of a co-employee. *Faragher* at 2290–2291.

██ Defendant City maintains that Mr. Landis' conduct was not so objectively constant, threatening or abusive to raise to the level of the Faragher standard of sexual harassment. Additionally, Defendant City maintains that even if the complained conduct could be construed as a matter of law to be sexual harassment that altered the condition of Plaintiff's employment, it is undisputed that the City's procedure required the Plaintiff to report sexual harassment to the City Manager or the Finance Director.

Plaintiff maintains that under the procedure cited, she was supposed to make her complaints to the City Manager who was a fellow "charter official" serving at the pleasure of the City council, including Landis and Beverland. Between March, 1995 and June, 1995, Plaintiff complained directly to Defendant Landis about his behavior, and asked him to put a stop to it. On March 31, 1995, Plaintiff made a complaint to Councilman Rockwell. On April 3, 1995, she complained to Vice Mayor Wiseman. On May 3, 1995, May 17, 1995 and sometime in early June, Plaintiff asked Mayor Beverland to talk to Landis about his behavior, and put a stop to it. (Deposition of Cheryl Mortenson, Vol. 2, Dkt. 20). When asked in deposition if the Mayor was her superior in 1995, Plaintiff responded "yes, along with the rest of the City Council." (Dkt.20, p. 235) Plaintiff reported complaints of Landis' behavior to City Manager Bruce Haddock and City Attorney Bryan Kutchins on June 15, 1995. Plaintiff maintains that her actions were not "unreasonable failure" to utilize the existing policy, given the unique circumstances and setting of these occurrences.

Defendant City further asserts that once the Plaintiff officially reported the unwelcome conduct on June 15, 1995, the City took prompt remedial action and the conduct ceased as confirmed by the August 11, 1995 letter from Deborah Crumbley, the City's labor lawyer, to Plaintiff.

Conversely, Plaintiff maintains that despite raising her concerns about the conduct of Landis to other council members, no attempt at remedial measures was taken for several months. Not only did she ask Mr. Landis to put an end to his inappropriate behavior, she also told other Council members what had transpired. Neither steps brought remedial action, instead the environment worsened. The impact of each incident was magnified because Landis continued his behavior in front of multiple witnesses including the Plaintiff's staff. Furthermore, Mayor Beverland contributed to the alleged hostile work environment by questioning Plaintiff in front of her staff about rumors that she was having an "affair" with Landis. Mayor Beverland continued on to describe, in the presence of Plaintiff's staff, the comparison Landis had drawn between Plaintiffs' breast and buttocks and those of Plaintiff's mother. (Dkt.35).

Plaintiff states in her deposition of January 4, 1999 that Deborah Crumbley's letter was untruthful, and the situation had not been resolved to her satisfaction. (Dkt.20, p. 220).

Defendant City maintains that as a response to the investigation conducted by the City attorney, sexual harassment training was suggested. Defendant City did conduct such classes. However Mayor Beverland did not attend because, "I don't deal with any female except my wife for 43 years, and I don't need to . . ., I didn't need to go to classes. I don't treat ladies out of the way." (Dkt.17, p. 43). When asked if he was familiar with Oldsmar's sexual harassment policy, the Mayor responded "no". (Dkt.17, p. 43).

Likewise Defendant Landis did not attend the training for sexual harassment because he was out of town. (Dkt.42). When asked if he was aware if the City of Oldsmar has a sexual harassment policy, Landis responded, "I don't know if they had one before but I believe they have one now." (Dkt.42).

Defendant City maintains that reasonable care was taken to prevent and correct promptly the sexually harassing behavior. Plaintiff maintains that Defendant did not demonstrate reasonable care. In order to prevail on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact in dispute. However, there are material factual disputes as to specific incidents of Defendant City's acts, and whether those acts sufficiently constitute a hostile work environment. *Marciano v. Kash N' Karry Foodstores, Inc.*, 1996 WL 420879, *4 (M.D.Fla.). Accordingly, Defendant's Motion for Summary Judgment (Dkt.27) on Counts I and II is **denied.**

B. Counts II and IV

Additionally, Defendant City seeks the entry of summary judgment as to Counts II and IV. These Counts allege that Defendant City violated Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992 in the form of retaliation against Plaintiff by humiliating, harassing, demoting, and finally terminating her after she reported her claims of sexual harassment.

In order to make a prima facie case of retaliation, Plaintiff must establish: (1) a statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action. *See Armstead v. City of St. Petersburg*, 1997 WL 724420 (M.D.Fla.), *citing Goldsmith v. City of Atmore*, 996 F.2d 1155 (11th Cir.1993).

Defendant City does not contest that Plaintiff's complaint of sexual harassment is statutorily protected expression, nor does Defendant City allege that Plaintiff's termination does not satisfy the definition of an adverse employment action. The remaining element required to make the prima facie showing of retaliation is the "causal link" between Plaintiff's complaints and the Defendants actions. To establish this element of the prima facie case of retaliation, Plaintiff needs to show that the protected activity and the adverse action are not completely unrelated. *See Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir.1998).

Defendant City asserts that as a matter of law there is no causal relation between Plaintiff's report of her sexual harassment claim in June, 1995, and her termination in April, 1997. Furthermore, Defendant contends this element of the prima facie case cited in *Wideman* is insupportable because of two primary factors: Plaintiff's original complaint in June 15, 1995, and her termination in April 15, 1997, are too far removed in time; and Plaintiff received favorable treatment in between the time she complained and was terminated.

In support of the Motion for Summary Judgment, Defendant City cites the case of *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir.1999). In this case, Appellant's trans-

fer and termination occurred 15 and 21 months, respectively, after Appellant filed her grievance against her supervisor. *Id.* The *Maniccia* court ruled that far from demonstrating a pattern of retaliatory activity, these two employment actions were isolated events that had no temporal relationship to Appellant's protected activity. *Id.* Additionally, the Court held that the only causal connection established by the evidence is between Appellant's misconduct and her termination. *Id.*

The case before us is distinguished from *Maniccia* in that Plaintiff was never transferred from her position or cited for misconduct. In fact, all of her performance evaluations for Plaintiff in her eighteen years of employment as City Clerk are favorable. (Dkt.35, personnel file). If there had been a problem with Plaintiff's conduct or job performance prior to her termination, it was never discussed with her before the City Council voted to terminate her. (Deposition of Linda MacDonald Dkt.30, p. 35). In *Maniccia,* Appellant lied on several occasions about misconduct, which supported a finding that Appellee had just cause to terminate her.

In regard to Defendant City's assertion that Plaintiff's complaint and termination are too far removed in time, Plaintiff argues that the Court should view a series of individual events between protected activity and discharge. *See Woodson v. Scott Paper Co.,* 109 F.3d 913 (3d Cir.1997). Plaintiff points to evidence of a series alleged retaliatory actions initiated after her complaint to City Manager and City Attorney, i.e. the investigation for alleged violation of the Wage and Hour Act in July 1995, Plaintiff's annual review was postponed in 1996, her office was dismantled whereby the cultural affairs was transferred to the library and the occupational licensing was transferred to community development, the City Manager sought to place before City Council a proposal which would diminish the Plaintiff's authority by placing her office and staff under his supervision, and Plaintiff was subjected to numerous outbursts by Mayor Beverland where he would go "ballistic," calling Plaintiff a liar in the presence of her staff, and, ultimately, Plaintiff's termination. (Dkt.20, pp. 227, 274–277).

Defendant asserts there is no causal relation between Plaintiff's complaint and termination because she received favorable treatment from the time the complaint was made until she was terminated. However in light of the allegations set forth by the Plaintiff in the preceding paragraph, factual disputes remain as to Defendants' contentions.

■ Once the plaintiff has established a prima facie case of retaliation, the burden now shifts to the defendant to show some non discriminatory purpose which the plaintiff asserts were retaliatory. *Armstead* supra at *5.

Defendant City asserts that City Council had received several complaints about Plaintiff, and she was no longer doing a good job function as a city clerk. Several Council members had difficulty communicating with her. It was time for a change with the new Council. (Dkt. 30, Depo. of Linda MacDonald). In *Armstead,* the Court found the Defendants assertions sufficient to meet the burden and therefore the burden devolves to the Plaintiff to show credible evidence of a genuine issue of material fact as to whether the city's proffered explanation is merely pretextual. *Id.* The *Armstead* Court believed the retaliation claim would turn in part on the credibility of the testimony. *Id.* "Credibility determinations, the weighing of evidence, and drawing of legitimate inferences from the facts, are jury functions." *Id.* With this consideration in mind, the Court finds Plaintiff's allegations of retaliation sufficient to survive Defendant's Motion for Summary Judgment.

Accordingly, Defendant City's Motion for Summary Judgment (Dkt.27) on Counts III and IV is **denied.**

## V. MOTION BY PLAINTIFF FOR PARTIAL SUMMARY JUDGMENT

█ In this case Plaintiff has included a state law count seeking damages for battery committed against her person by Defendant Daryl Landis. At the time of the alleged act, Plaintiff was the duly appointed city clerk of the City of Oldsmar and Defendant Landis was an elected member of the Oldsmar City Council. Plaintiff's complaint alleges that Landis committed a battery by hugging and kissing her at the Harbor Palms Park dedication ceremony, May 12, 1995, a function attended by Landis and Plaintiff in their official capacities. Plaintiff asserts that this touching was uninvited, unwelcome and offensive to her, constituting a civil battery against her.

Plaintiff seeks partial summary judgment on the issue that the uninvited hug and kiss was intentional, unconsented and offensive. Plaintiff contends there no genuine issue of material fact exist as to whether Landis' act constituted a battery.

Plaintiff relies on the case of *Paul v. Holbrook*, 696 So.2d 1311 (Fla. 5th DCA 1997) as the controlling law to establish the proof required for a battery. Plaintiff contends that the *Paul* court ruled, under the law governing battery, Defendant is liable for all intentional contact with the Plaintiff, even those termed "relatively trivial" along with being liable for those which do actual harm. *Paul* at 1312. The *Paul* court explained that the relevant test is the examination of what would be offensive to an ordinary person, not an unduly sensitive person. *Id.* Plaintiff further asserts that the *Paul* court concluded that offensiveness is a question for the trier of fact to decide. The inclusion of this statement in the Plaintiff's memorandum contradicts the purpose of the motion, and indicates that what is "offensive" *is* a genuine issue of material fact.

In describing the incident at the Harbor Palms dedication, on May 12, 1995, Plaintiff states she was on her way to the soda table and Daryl Landis came up from behind and gave her a kiss on the lips.

(Deposition of Cheryl Mortenson, Vol. 2 at 156). Plaintiff goes on to describe her reaction as "shocked and dismayed."

Conversely, describing the same incident, Defendant Landis states that when he saw her he was concerned about how she was feeling. Mr. Landis and his wife, and Plaintiff and her husband, had plans to go out on a double date the previous night. The plans were cancelled because Plaintiff was bitten by a spider and she was not feeling well. When Defendant Landis saw her the next day at the dedication, he said she looked like "death warmed -over." Defendant contends he reached out to her as a concerned friend, saying "Are you okay, you look terrible, you don't look well," and he kissed her on the cheek. (Deposition of Daryl Landis, Dkt.42 at 49–50).

In order to prevail on Plaintiff's Motion for Partial Summary Judgment, "the moving party must show there are no issues of material fact in dispute." Fed.R.Civ.Pro. 56(c). There are, however, factual disputes to specific details of Defendant Landis' behavior at the Harbor Palms Park dedication, and whether his actions sufficiently constitute a civil battery. Because Plaintiff and the Defendant are in disagreement as to what happened at the Harbor Palms dedication in regards the "kiss", a dispute as to a material issue of fact is present. A determination of how an objectively reasonable person perceives a set of circumstances is a question of fact. The jury must determine whether the "kiss" constituted a civil battery.

When the Court views all the evidence in the light most favorable to the nonmoving party, the Court finds that movant has failed to establish there is no genuine issue of material fact. Plaintiff's Motion for Partial Summary Judgment (Dkt.33) is denied. Accordingly, it is

**ORDERED** that Defendant Landis' Motion for Partial Summary Judgment (Dkt.25) is **denied;** the Motion for Summary Judgment of Defendant City of Olds-

mar (Dkt.27) is **denied;** and Plaintiff's Motion for Partial Summary Judgment (Dkt.33) is **denied.**

**DONE and ORDERED.**