Sean ST. LOUIS, Plaintiff,

v.

**Harlan SANDS, in his individual capacity, Defendant.**

**No. 05–21320–CIV–MOORE.**

United States District Court, S.D. Florida.

Nov. 8, 2005.

David Adrian Howard, Miami, Erika
Deutsch Rotbart, Deutsch Rothart & As-

sociates, P.A., Boca Raton, LA, for Plaintiff.

Robert T. Kofman, Ingrid Hamann Ponce, Stearns Weaver Miller Weissler Alhadeff & Sitterson, Miami, FL, for Defendants.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss Amended Complaint with Prejudice (DE # 13).[1]

UPON CONSIDERATION of the motion and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

This is an action for civil rights violations arising under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Plaintiff, Sean St. Louis is a black male residing in Miami–Dade County, Florida. Am. Compl. at ¶ 4. From November 1997 until his termination and/or resignation on or about November 26, 2004, Plaintiff was employed as the Associate Controller of Contracts and Grants by Florida International University ("FIU")[2]. *Id.* at ¶¶ 4–5, 7. Defendant, Harlan Sands, was the Chief Executive Officer of the Hemispheric Center for Environmental Technology ("HCET") of FIU. *Id.* at ¶ 6. Plaintiff alleges that Defendant subjected Plaintiff to discriminatory treatment in the workplace and indicated his dislike of blacks. *Id.* at ¶ 10. Plaintiff alleges that during the course of his employment Plaintiff identified numerous problem areas within the Sponsored Research Department as well as the HCET. *Id.* at ¶ 11. Plaintiff informed his immediate supervisors and several FIU officials of these federal guideline violations. *Id.* at ¶ 11. Defendant ignored Plaintiff's warnings. *Id.* Plaintiff alleges that his attempts to implement changes to bring the Sponsored Research Department and the HCET into compliance with federal regulations were met with resistance from FIU officials, including Defendant. *Id.* at ¶ 12. From approximately early 2000 until the middle of 2004, FIU underwent a federal audit by the United States Department of Health and Human Services. *Id.* at ¶ 13. Plaintiff showed the auditors documents that revealed FIU's historical accounting problems. *Id.* On or about November 2003 Plaintiff was subpoenaed to appear before the United States Department of Justice in Washington, D.C. *Id.* at ¶ 14. Plaintiff testified about his experiences with the HCET and the problems that he encountered after relaying his concerns to FIU officials. *Id.* FIU was ultimately fined $11 million dollars by the United States. *Id.* at ¶ 15. Thereafter, Plaintiff's department was transferred to the Academic Affairs/Sponsored Research section of FIU and Defendant became Plaintiff's direct supervisor. *Id.* at ¶ 16. Defendant ordered Plaintiff to "reverse all of the unallowable charge journals he had processed," stating that Plaintiff did not have the authority to make those entries. *Id.* at ¶ 17. When Defendant became the Chief Executive Officer of the HCET he transferred Plaintiff to the HCET. *Id.* Defendant told Plaintiff that his actions hampered FIU's defense against the findings of the Department of Health and Human Services' audit. *Id.* On or about October 1, 2004 Plaintiff met with several members of FIU's administration including Paul Mi-

---

1. Plaintiff's amended complaint was filed on July 8, 2005 and was titled *Complaint and Jury Demand.* Pl. Res. at 1, n. 1. The title was an inadvertent clerical error and should have read *Amended Complaint and Jury Demand.* Id.

2. FIU is a public university funded by the State of Florida

chaud ("Michaud"), the Director of Human Resources at FIU. *Id.* at ¶ 18. Plaintiff was informed, both orally and in writing, that Defendant had made the decision to terminate Plaintiff's position as Associate Controller for Contracts and Grants and to abolish the entire Contracts and Grants Department. *Id.* Plaintiff alleges that Michaud told him that "the reason for the abolishment of the unit was due to negative findings on the HCET audit, and that the University needed to look for employees of a higher skill level to work in that department." *Id.* The majority of the employees within the Contracts and Grants department were black and many of them had worked for FIU for a number of years. *Id.* at ¶ 19. Michaud and other members of FIU's administration met with other employees from the Contracts and Grants Department and told them of the abolishment of the department. *Id.* at ¶ 20. Furthermore, they instructed the employees that they could apply for new positions but that those positions would require "more sophisticated skills" than they possessed. *Id.*

On October 4, 2004 Plaintiff met with Charles Tinder, Senior Director of College Finances at FIU who advised Plaintiff that the Human Resources department had made a mistake and that FIU wanted Plaintiff to remain as an employee through the end of the audit. *Id.* at ¶ 21. Tinder contacted Michaud regarding Plaintiff's termination. *Id.* at ¶ 23. Michaud stated that he had received instructions from the executive committee—which included Defendant—to terminate Plaintiff. *Id.* Michaud apologized to Plaintiff for the mistake and asked Plaintiff to return to his office. *Id.* at ¶ 23. On October 5, 2004 Ms. Mendoza met with Plaintiff and Plaintiff received another apology. *Id.* at ¶ 24. Ms. Medoza further stated that "Mr. Michaud should not have mentioned [that] the reason for the abolishment of the unit was due to the HCET audit findings." *Id.*

On or about October 6, 2004 Plaintiff asked Michaud why, on or about September 6, 2004, his position had been advertised under a different title and why interviews for his possible replacement had been conducted as far back as January 2004. *Id.* at ¶ 25. Michaud did not respond. *Id.* On October 22, 2004 Defendant approached Plaintiff and asked what his learning experience had been with being let go. *Id.* at ¶ 26. Specifically, Defendant asked: "If you had to do it all over again, what would you do differently." *Id.* Defendant also stated that "[p]art of the reason you are in this situation was the fact that you cannot play politics." *Id.*

Plaintiff became aware that FIU had posted a vacancy on the internet for a position with a job description similar to the Associate Controller for Contracts and Grants. *Id.* at ¶ 27. Plaintiff applied for this position, however, despite his credentials, he did not obtain the position. *Id.* It was then that Plaintiff knew that FIU had no intention of re-hiring him for any position in light of his speaking out on a matter of public concern. *Id.* Plaintiff alleges that the discrimination to which he was subjected during the course of his employment is part of a pattern and practice of discrimination by Defendant against FIU's black employees. *Id.* at ¶ 28. Plaintiff alleges that Defendant's employment practices were designed to deny black employees the same treatment afforded to others. *Id.* at ¶ 28. These practices included: violating FIU policy to benefit Hispanic employees, encouraging a system of unequal pay to blacks, hiring Hispanics with little or no experience as part of the reorganization of the Contracts and Grants Department, and bypassing qualified black candidates in favor of Hispanics or Anglo–Americans. *Id.* at ¶ 28. Plaintiff alleges that on or about November 26, 2004, he was forced to take the necessary steps to ensure the financial security of his family "after seeing all of the

writing on the wall" and was forced into a termination and/or constructive discharge by Defendant. *Id.* at ¶ 29.

Plaintiff has filed a two count complaint against Defendant Harlan Sands in his individual capacity. In Count I Plaintiff alleges a pattern and practice of racial discrimination in violation of 42 U.S.C. § 1981. In Count II Plaintiff alleges a violation 42 U.S.C. § 1983 based on alleged violations of his First and Fourteenth amendment rights. Plaintiff alleges that his First amendment rights were violated because his termination was in retaliation for speaking out on issues of public concern. Plaintiff alleges that his Fourteenth amendment rights were violated because Plaintiff was deprived of his liberty interest in his good name and reputation and was deprived of his property interest in his right to engage in his employment as Associate Controller of Contracts and Grants for FIU.

## DISCUSSION

### A. Motion to Dismiss Standard

Pursuant to Fed.R.Civ.P. 12(b)(6), a motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). On such a motion to dismiss, the Court notes that it must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir. 1988). Consideration of matters beyond the complaint is improper in the context of a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Milburn,* 734 F.2d at 765. The

Court must, "[a]t this stage of the litigation, ... accept [the plaintiff's] allegations as true." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Further, the Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *S. Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996).

■ However, in § 1983 actions where government officials sued in their individual capacities have raised the defense of qualified immunity, the Eleventh Circuit has "tightened" the pleading requirements. *GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1367 (11th Cir.1998). In *Oladeinde v. City of Birmingham,* the Eleventh Circuit held that in cases where qualified immunity is implicated, "some factual detail is necessary, especially if [the court is] to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." 963 F.2d 1481, 1485 (11th Cir.1992). "More than mere conclusory notice pleading is required.... [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984). Accordingly, in determining whether a plaintiff has stated a § 1983 claim against a defendant in his or her individual capacity, courts must be "guided both by the regular 12(b)(6) standard and by the heightened pleading requirement." *GJR Investments,* 132 F.3d at 1367.[3]

---

**3.** Plaintiff has attempted to argue that there is no heightened pleading requirement in § 1983 cases. Plaintiff is incorrect. The law is clear that with the exception of § 1983 cases for municipal liability there is a heightened pleading standard in § 1983 cases. *See GJR Invs., Inc. v. County of Escambia, Fla.,*

132 F.3d 1359, 1366–67 (11th Cir.1998); *cf., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (holding that a court may not apply a heightened pleading standard more stringent than the

## B. Analysis

Defendant argues that Plaintiff's Amended Complaint should be dismissed for three reasons. First, Defendant argues that all claims against him in his individual capacity are barred by the doctrine of qualified immunity. Def. Mot. at 2. Second, Defendant argues that the Amended Complaint does not meet the Eleventh Circuit's heightened pleading requirements for civil rights claims against government officials in their individual capacities. *Id.* Third, Defendant contends that the Amended Complaint is in essence seeking to impose liability on FIU, which it cannot legally do pursuant to the Eleventh Amendment.[4,5]

### 1. *Qualified Immunity*

■ While qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss. *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir.1997). The motion will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." *Id.* Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

■ To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002). Plaintiff argues that Defendant "has not made any allegation or showing whatsoever to demonstrate that his actions were undertaken pursuant to the performance of his duties or that they were within the scope of his discretionary authority." Pl. Resp. at 8. However, according to the Amended Complaint "[a]ll actions taken against Plaintiff by the individual Defendant [were] within the course and scope of his authority as Plaintiff's supervisor and agent of FIU, under color of law." Am. Compl. at ¶ 6. Plaintiff further alleges that "Sands had the final policy making authority with respect to terminating the employment of Plaintiff." *Id.* Thus, according to Plaintiff's own allegations, which must be taken as true, Defendant was acting within the scope of his discretionary authority. The burden thus shifts to Plaintiff to show that qualified

---

usual pleading requirements of Rule 8 in civil rights cases alleging municipal liability under § 1983).

**4.** On or about May 13, 2005 Plaintiff filed his original three-count Complaint alleging violations of 42 U.S.C. § 1981 and § 1983 against Sands in his individual and official capacity as well as against FIU (DE # 1). Counsel for FIU notified counsel for Plaintiff that all claims against FIU were barred by sovereign immunity and that claims seeking monetary damages against Sands in his official capacity were likewise barred by the Eleventh Amendment. Def. Mot. at 3. Subsequently, Plaintiff voluntarily dismissed the original Complaint. *Id.* Plaintiff filed an Amended Complaint on

July 8, 2005 against Sands in his individual capacity.

**5.** Defendant contends that Counts I and II of the Amended Complaint state claims against Sands in both his individual and official capacities. Def. Mot. at 4. In his response to Defendant's motion to dismiss, Plaintiff states that "[a]lthough admittedly there are some references in Plaintiff's Amended Complaint as to Sands acting in his individual and official capacity, the overall pleading in the Amended Complaint focuses on Sands's individual conduct in his individual capacity, and makes it clear that the Amended Complaint is directed solely at Sands, and no one else." Pl. Resp. at 8.

immunity is not appropriate. *Ferraro,* 284 F.3d at 1194.

■ To evaluate a claim of qualified immunity the Court must first determine whether the alleged facts show that the defendant's conduct violated the plaintiff's constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.; GJR Invs., Inc.,* 132 F.3d at 1366–67 ("If a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right."). However, if the Court finds that a constitutional right has been violated, it must then determine whether that right was "clearly established." *Id.* To determine whether the law is "clearly established," the standard is not whether preexisting law provides a set of "materially similar" facts, but "whether the state of the law [at the time in question] gave [the defendants] fair warning that their alleged [conduct] was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

### a. *Count I—42 U.S.C. § 1981 Claim*

■ Count I of Plaintiff's Amended Complaint states a claim for racial discrimination in violation of 42 U.S.C. § 1981. This Court notes that 42 U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Vason v. City of Montgomery,* 240 F.3d 905 (11th Cir.2001) (citing *Jett v. Dallas Indepen-*

dent School District, 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)); *Butts v. County of Volusia,* 222 F.3d 891, 892 (11th Cir.2000). Therefore, Count I, Plaintiff's claim for the violation of 42 U.S.C. § 1981 is improperly brought as a separate claim. Plaintiff's § 1981 claims are thus merged into his § 1983 claims. This Court addresses Defendant's entitlement to qualified immunity as if Plaintiff had properly used the remedial provisions of § 1983 to enforce the rights created by § 1981.[6]

■ At issue is whether Plaintiff's Amended Complaint adequately alleges the elements of a 42 U.S.C. § 1981 violation. In order to state a claim under this statute, a private plaintiff must allege the following elements: (1) discrimination; (2) that is based on race, color, or national origin; and (3) the intent to discriminate. *See Guardians Ass'n v. Civil Service Comm'n of the City of New York,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983).

■ Plaintiff contends that he has stated a claim for violations of his constitutional rights pursuant to 42 U.S.C. § 1981 and refers this Court to paragraphs 1, 10, 12, 13, 17, 18, 19, 23, 28, and 30 of the Amended Complaint. Pl. Resp. at 5, 10. Upon careful examination of these paragraphs of the Amended Complaint, it is clear that paragraphs 12, 13, 17, 18 and 23 are not relevant to Plaintiff's claim for racial discrimination. The remaining paragraphs are reproduced below.

¶ 1 This is an action by SEAN ST. LOUIS (hereafter "ST. LOUIS" or "Plaintiff"), a Black male, against his former direct supervisor, HARLAN SANDS (hereafter "SANDS" or "Defendant"). ST. LOUIS alleges that SAND'S employment practices deny

---

6. Plaintiff argues that the heightened pleading requirement does not apply to § 1981 claims. Pl. Resp. at 10. Plaintiff is mistaken. Because claims for violations of § 1981 are properly brought under § 1983, the § 1983 heightened pleading requirements are applicable to a claim for violations of § 1981.

Black employees the same treatment and benefits as non-black and Hispanic employees; and that SANDS subjected ST. LOUIS to intentional discrimination on the basis of his race. Ultimately, ST. LOUIS was forced into a resignation/termination situation from his employment with FIU on or about November 26, 2004, due to pretextual reasons as a result of his participation in an audit performed by the Department of Health and Human Services, and later testifying about said audit findings before the U.S. Department of Justice. This action is brought pursuant to 42 U.S.C. § 1981 for injunctive relief and damages . . . .

¶ 10 In the course of supervising ST. LOUIS, SANDS subjected ST. LOUIS to discriminatory treatment in the workplace and indicated his dislike of blacks.

¶ 19 It should be noted that the majority of the employees within the Contracts and Grants department were black, and many of them had worked for FIU for a number of years.

¶ 28 ST. LOUIS also maintains that the discrimination to which he was subjected to during the course of his employment is part of a pattern and practice of discrimination against [sic] by SANDS against FIU's black employees. SAND'S employment practices were administered in a discriminatory fashion to as to deny black employees the same treatment, benefits, compensation, and other opportunities as are afforded to employees not of black heritage. SAND'S discriminatory employment practices against its black employees are set forth below, including, but not limited to:

a. SANDS routinely violated University policy to benefit Hispanic employees.

b. SANDS encouraged a system of unequal pay to Blacks, as they are at the low end of the pay scale for administrative positions.

c. SANDS hired Hispanics, with little or no experience as part of the reorganization of the Contracts and Grants Department to replace those individuals previously employed in that department with some of the highest degree of skill.

d. SANDS constantly bypassed qualified Black candidate [sic] for positions that were ultimately given to Hispanics or Anglo–American individuals.

¶ 30 There were no legitimate, non-discriminatory reasons for Plaintiff's termination.

Plaintiff has included some general statements regarding racial discrimination in the Amended Complaint. See ¶ 1, 10, 19, 28, 30. Of the allegations in the Amended Complaint, the most substantive allegations of racial discrimination are found in ¶ 28. Even this paragraph, however, consists of conclusory allegations of unlawful discrimination. There is an absolute dearth of specific facts which would support any inference that Defendant intentionally treated him the way he did because of his race. Construed in the light most favorable to Plaintiff, the allegations in the Complaint are insufficient to establish that Sands violated Plaintiff's constitutional rights. See Barts v. Joyner, 865 F.2d 1187, 1190 (11th Cir.1989) (holding that a plaintiff's burden cannot be satisfied "simply by making general, conclusory allegations of some constitutional violation or by stating broad legal truisms.").

Because nothing on the face of Plaintiff's Amended Complaint demonstrates that Defendant acted with racial animus to de-

prive Plaintiff of a clearly established § 1981 right, Defendant is entitled to qualified immunity.

### b. *Count II—42 U.S.C. § 1983 Federal Civil Rights Violations*

#### i. *First Amendment Rights*

Plaintiff alleges that Defendant retaliated against him in violation of his First Amendment right to freedom of speech for testimony he gave while employed by FIU in violation of 42 U.S.C. § 1983. Plaintiff contends that the allegations set forth in paragraphs 12, 13, 17, 23, and 26 reference specific facts, in accordance with the heightened pleading requirement, to state a claim for a violation of his First Amendment rights. Pl. Resp. at 12. Paragraphs 12, 13, 17, 23 and 26 are set forth below:

¶ 12 ST. LOUIS attempted to implement changes in order for the Sponsored Research Department and HCET to be in compliance with applicable federal regulations. However, his attempts were met with resistance, as well as lack of support from FIU's officials, including SANDS.

¶ 13 On or about early 2000 through the middle of 2004, FIU underwent a federal audit by the United States Department of Health and Human Services. As a result, ST. LOUIS led the auditors to files containing documents, which revealed the historical accounting problems that ST. LOUIS had previously advised FIU officials of, and that both he and his staff encountered with the HCET. The findings of the audit centered around SAND'S and FIU's intentional lack of action when notified of compliance issues and problems with the HCET that it intentionally continued to avoid dealing with.

¶ 17 SANDS ordered ST. LOUIS to reverse all of the unallowable charge journals he had processed stating that ST. LOUIS did not have the authority to make those entries despite ST. LOUIS having received prior approval from his previous supervisors. Ultimately, SANDS became the C.E.O. of HCET and transferred ST. LOUIS to HCET. SANDS advised ST. LOUIS that his actions "hampered the efforts" of FIU's attorneys Hogan and Hartsen in building a defense against the findings of the Department of Health and Human Services.

¶ 23 Mr. Tinder proceeded to contact Mr. Michaud regarding ST. LOUIS'S termination, at which time Mr. Michaud stated that he had in fact received instructions to terminate ST. LOUIS from the executive committee which included SANDS. Thereafter, Mr. Michaud issued a verbal apology to ST. LOUIS for the mistake, and asked ST. LOUIS to return to his office, and report to HCET.

¶ 26 On Friday October 22, 2004, SANDS approached ST. LOUIS and asked what his learning experience was with the ordeal of being let go. Specifically, SANDS asked, "If you had to do it all over again what would you do differently?" SANDS further stated to ST. LOUIS that, "Part of the reason you are in this situation was the fact that you cannot play politics."

■ As a government employee, Plaintiff does not enjoy an absolute right to freedom of speech. *See Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989) ("Although the law is well-established that the state may not demote or discharge a public employee in retaliation for speech protected under the first amendment, a public employee's right to freedom of speech is not absolute") (citing *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). In assessing the validity of a retaliation claim, the court applies the four-part test set forth in *Bryson v. City of Waycross*, 888

F.2d 1562, 1565–66 (11th Cir.1989). The Court must first determine whether the employee's speech related to a matter of public concern. *Id.* If so, the court must weigh the employee's First Amendment interests against "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (citations omitted). If the employee prevails on this balancing test, the court then determines whether the employee's speech played a substantial role in the state's employment decision. *Id.* If the employee shows that the speech was a substantial motivating factor, the state must prove that it would have reached the same decision in the absence of the protected speech. *Id.*

### 1. *Public Concern*

■ An employee's speech is of public concern when it relates to a "matter of political, social, or other concern to the community." *Morgan v. Ford,* 6 F.3d 750, 754 (11th Cir.1993)(quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). To determine whether the speech was for public or private purposes, the Court must consider the "content, form and context of a given statement as revealed by the whole record." *Id.*

■ Based on the allegations in the Amended Complaint, the Court determines that Plaintiff's testimony before the United States Department of Justice regarding "his experiences with the HCET and the problems that he had encountered after relaying his concerns to FIU officials,"[7] may be fairly characterized as constituting speech on a matter of public concern. *See Connick,* 461 U.S. at 146, 103 S.Ct. 1684 (finding that to involve a matter of public concern, a government employee's speech must "relate to any matter of political, social, or other concern to the communi-

ty"); *Bryson,* 888 F.2d at 1565. Plaintiff's speech "brought to light actual or potential wrongdoing . . . ." *Connick,* 461 U.S. at 148, 103 S.Ct. 1684.

### 2. *Plaintiff's Speech Measured Against the Government Interest*

■ We next consider whether Plaintiffs' speech is protected when measured against the government's interest in the efficient provision of public services. A "core concern" of the First Amendment is the protection of whistleblowers who report government wrongdoing. *Bryson,* 888 F.2d at 1566. As a result, Plaintiff's interest in this speech is high. In contrast, the University's interest in preventing this kind of speech is relatively low. Preventing Plaintiffs' speech would not aid the government's interest in efficiency, since the speech would bring the alleged wrongful practices to light and lead to more efficient operations. Thus, assuming Plaintiff can prove his allegations at trial, the content, form and context of Plaintiff's testimony lead this Court to conclude that Plaintiff has satisfied the first two steps of the *Bryson* test.

### 3. *Causation*

We turn next to causation. This Court must determine whether Plaintiff's speech played a "substantial part" in the government's decision. To establish a causal connection, a plaintiff must show that "the decision-makers [were] aware of the protected conduct," and "that the protected activity and the adverse action were not wholly unrelated." *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir.1999) (citations, internal marks, and emphasis omitted). For purposes of a prima facie case, "close temporal proximity" may be sufficient to show that the protected activity and the adverse action were not "wholly unrelated." *Id.*

7. Am. Compl. at ¶ 14

Defendant argues that the one year gap between the alleged speech to Plaintiff's "termination" and/or FIU's failure to re-hire Plaintiff defeats any inference of causation and cannot be said to be objectively unreasonable. Def. Mot. at 9–10. Plaintiff admits that the length of time between the protected speech and Plaintiff's termination, would at first glance seem fatal to Plaintiff's claim. Pl. Resp. at 11. However, Plaintiff contends that the events that occurred between the protected speech and Plaintiff's termination should be taken into account and that Plaintiff must merely show that the protected speech and the termination are not completely unrelated. Pl. Resp. at 11–12 (citing *Mortenson v. City of Oldsmar*, 54 F.Supp.2d 1118 (M.D.Fla.1999); *Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir.1997)). Plaintiff argues that "[p]erhaps it would have been wiser of Plaintiff to fill in the blanks of what happened during that detrimental year that ended in his wrongful termination; although at this stage of the case that is not necessary, as time is merely a factor in establishing a causal connection in a case." Pl. Resp. at 11.

 In the instant case, Plaintiff alleges that he brought certain information to the attention of the public on or about November 2003. Am. Compl. at ¶ 14.

Plaintiff then alleges that on or about Friday, October 1, 2004 he was informed that the University had made the decision to terminate his employment. *Id.* at ¶ 18. On or about Monday, October 4, 2004 Plaintiff was informed that his termination had been in error and was asked to return to work. *Id.* at ¶ 21. Plaintiff then alleges that "[u]ltimately, [he] was forced to take the necessary steps to ensure the financial security of his family after seeing all of the writing on the wall. Consequently, [he] *was forced into termination and/or constructive discharge* by Sands from FIU on or about November 26, 2004." *Id.* at ¶ 29 (emphasis added). Plaintiff further alleges that his public statements were the motivating factors for his "termination." Am. Compl. at ¶ 47. Plaintiff, however, has utterly failed to plead facts connecting his speech and his subsequent alleged "termination" which occurred over one year after the alleged speech.[8] Plaintiff's conclusory allegations regarding the causal connection essential to his First Amendment claim are insufficient to meet the heightened specificity required for a § 1983 claim. *See GJR Invs., Inc.*, 132 F.3d at 1366–67. Plaintiff has thus failed to allege the violation of a clearly established constitutional right and Defendant is entitled to qualified immunity on Plaintiff's claim for the violation of his First amendment rights.[9]

---

**8.** Where, as here, a year elapsed between the last of Plaintiff's protected conduct and the allegedly retaliatory action, the timing of the events does not constitute circumstantial evidence of causation. *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citing affirmatively several court of appeals decisions for the proposition that a three to four month gap is insufficient to establish the causal relation prong in a retaliation case); *Wascura v. City of South Miami*, 257 F.3d 1238, 1244–45 (11th Cir.2001) (While a close temporal proximity between two events may support a finding of a causal connection between those two events, the three and one-half month period between plaintiff's protected

conduct and the adverse employment action challenged does not, standing alone, establish a causal connection).

**9.** Moreover, even since *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), courts have been hesitant to hold that the case-by-case First Amendment retaliation analysis espoused in Pickering and Connick applies with obvious clarity to a defendant's conduct. *see also Anderson v. Burke County, Ga.*, 239 F.3d 1216, 1222 (11th Cir. 2001) ("[O]nly in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated 'clearly established' federal

**ii** *Fourteenth Amendment Rights*

 Plaintiff alleges that he was deprived of his liberty interest in his good name and reputation and was deprived of his property interest in his right to engage in his employment in violation of the Fourteenth amendment. To prevail upon his procedural due process claim, Plaintiff must establish: (1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation. *See Bank of Jackson County v. Cherry,* 980 F.2d 1362, 1366 (11th Cir. 1993) (citing *Lehr v. Robertson,* 463 U.S. 248, 256, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668, (1979); *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

Plaintiff alleges that

¶ 42 The due process clause of the Fourteenth Amendment of the U.S. Constitution protects ST. LOUIS'S liberty interest in his good name and reputation and ST. LOUIS'S property interest in his right to engage in his employment in his capacity as Associate Controller of Contracts and Grants for FIU.

¶ 43 ST. LOUIS was deprived of his liberty and property interests without due process of law by known and unknown persons employed by FI including SANDS who have committed the acts described in paragraphs 11 through 30 above.

¶ 44 The embarrassing and humiliating conduct described in paragraphs 7 through 29 above have been done in a public manner by SANDS despite the fact that such conduct is illegal.

rights.") (internal citations and quotations omitted).

 In the first instance the Court must decide if Plaintiff was due any process at all under the circumstances. If he had no property interest in his continued employment with the University, Plaintiff was not entitled to procedural due process. In order to have a property interest in his job, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. If he had no property interest in his employment, Plaintiff's claim will fail because there is no constitutional claim. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citing *Roth,* 408 U.S. at 576–78, 92 S.Ct. 2701). Property interests, "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701.

Defendant argues that Plaintiff does not have property interest in his job at FIU. Def. Mot. at 12. In Florida, argues Defendant, state law confers only limited property interest on university employees. Section 6C8–4.018 of the Florida Administrative Code states that administrative and professional staff of public universities may be "terminated without cause at any time by giving written notice to the employee." *Id.* (citing Fla. Admin. Code § 6C8–4.018(1)(a)). The code provides that an employee with over one year of service, such as Plaintiff, is entitled to a maximum of six months notice before termination. *Id.* (citing Fla. Admin. Code § 6C8–4.018(1)(a)2). The university has the option of allowing the employee to

"continue to work at the University during the notification period in the same position or in a different position." *Id.* (citing Fla. Admin. Code § 6C8–4.018(3)(a)). Plaintiff, Defendant argues, has not pled that he was terminated in violation of Florida law and in fact FIU asked Plaintiff to "remain as an employee through the end of the ongoing audit." Def. Mot. at 13 (citing Am. Compl. ¶ 21).

In his response, Plaintiff concedes that he was an "at-will" employee and has no property interest in his employment. Resp. at 14. Plaintiff argues, however, that "even though an employee may not be entitled to due process protections because he has no property interest in his employment, he might still be entitled to procedural protections 'for the narrow purpose of vindicating his reputation.'" Pl. Resp. at 13 (citing *Robison v. Wichita Falls and North Texas Community Action Corp.,* 507 F.2d 245, 252 (5th Cir.1975)).

▮ To prevail on a claim that government action deprived the plaintiff of a liberty interest in reputation, the plaintiff must show: (1) a stigmatizing allegation; *Roth,* 408 U.S. at 573, 92 S.Ct. 2701; (2) dissemination or publication of that allegation; *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Roth,* 408 U.S. at 573–74, 92 S.Ct. 2701; and (3) loss of some tangible interest due to publication of the stigmatizing allegation. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Roth,* 408 U.S. at 573–74, 92 S.Ct. 2701.

▮ Plaintiff contends that he "was unable to obtain any other position with FIU upon his termination/forced resignation, and ultimately everyone knew what [sic] he was no longer employed by FIU for reasons which stemmed from their discriminatory practices and/or his speaking out about a matter of public concern." Pl. Resp. at 14 (citing Amended Compl. ¶ 27). "At the very least, Plaintiff's good name

and reputation were harmed as a result of numerous employees coming to find out about his termination/forced resignation." Pl. Resp. at 14.

Plaintiff cites to Paragraph 27 of the Amended Complaint as alleging that his reputation was harmed. A careful examination of paragraph 27 as well as the rest of the Amended Complaint shows that Plaintiff has made no such allegation in the Amended Complaint.

¶ 27 ST.LOUIS became aware that FIU had posted a vacancy on the internet for a position with a similar job description to which he held as the Associate Controller for Contracts & Grants; and ST. LOUIS applied for the position in addition to other positions for which he was highly qualified for. Despite his credentials, ST. LOUIS did not obtain any position. It was at that time that ST. LOUIS knew that FIU had no intention of re-hiring him for any position whatsoever in light of his speaking out a matter of public concern.

In this case, Plaintiff does not allege that in declining to rehire Plaintiff, or in terminating him or in forcing him to resign, the University made any charge against him that might seriously damage his standing and associations in his community. *See Roth,* 408 U.S. at 573, 92 S.Ct. 2701. Plaintiff does not allege that Defendant caused it to be known or based his termination on the fact that he had been guilty of dishonesty, or immorality. *Id.* In such a case, due process would accord an opportunity to refute the charge before University officials. *Id.* at 573 n. 12, 92 S.Ct. 2701 ("The purpose of such notice and hearing ['for the narrow purpose of vindicating his reputation'] is to provide the person with an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of

course, may remain free to deny him future employment for other purposes."). In the present case, however, Plaintiff has not even alleged that his "good name, reputation, honor, or integrity" is at stake. *Id.* at 573, 92 S.Ct. 2701. In fact, quite to the contrary, Plaintiff has alleged that it is now well-known that he spoke out against corruption and discrimination. Accordingly, this Court finds that Plaintiff has failed to allege a violation of a clearly established constitutional right and Defendant is entitled to qualified immunity on Plaintiff's claim for the violation of his Fourteenth amendment rights.

### CONCLUSION

Accordingly, based on the foregoing, it is

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss Amended Complaint with Prejudice (DE # 13) is GRANTED. This case is CLOSED.